IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| BERNIE QUARTERMAN, | § | |
| | § | Civil Action No. <u>CV420-006</u> |
| Plaintiff, | § | |
| v. | § | **VERIFIED COMPLAINT** |
| | § | |
| CITY OF WALTHOURVILLE, GEORGIA; | § | **JURY DEMAND REQUESTED** |
| and MAYOR DAISY S. PRAY, | § | |
| In her individual Capacity, | § | |
| and MELISSA JONES, | § | |
| In her individual Capacity, | § | |
| and JEFFERY ARNOLD, | § | |
| In his individual Capacity, | § | |
| And ANDREW JOHNSON | § | |
| In his individual Capacity, | § | |
| | § | |
| | § | |
| Defendant(s). | | |

\*\*\* **AMENDED** \*\*\*

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Bernie Quarterman ("Plaintiff" or "Quarterman") through
undersigned counsel, and files this Complaint for Damages under the Fair Labor Standards Act
of 1938 ("FLSA") and the Fourteenth Amendment Right to Due Process against Defendants,
City of Walthourville, Georgia ("Defendant City"), Daisy S. Pray ("Defendant Pray"),
individually, Melissa Jones ("Defendant Jones"), individually, Jeffery Arnold ("Defendant
Arnold"), individually, Andrew Johnson (Defendant Johnson"), individually, (collectively
referred to as "Defendants"), and shows the following:

### I.   Nature of Complaint

1. Plaintiff brings this action to obtain full and complete relief and to address the unlawful
   employment practices described herein.

Southern District of Georgia
Savannah Division                    Page **1** of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

2. Plaintiff Chief Quarterman brings his claim upon which relief may be granted, with regard to his claim that he was intentionally retaliated against in violation of the FLSA, by Mayor Daisy Pray and supported by city employees and appointees. Chief Quarterman "head asserts" that "he was retaliated against in violation of the FLSA", as the facts "to make plausible that he was discharged [and] discriminated against because he filed a complaint or instituted or caused to be instituted [as a confidential informant/witness, bound officer of the law, reported the alleged felony criminal conduct of Mayor Daisy Pray to District Attorney Tom Durden] a proceeding under or related to the FLSA." This is when Chief Quarterman became the focus of Mayor Daisy Pray's revenge. The "material facts" show that as a resultant "the 'immediate cause of [his] discharge [was] retaliation.'" This can be implemented through direct or circumstantial evidence. It was at this point that the conspiracy/coelution began with Mayor Daisy Pray, City Clerk Melissa Jones, and City Attorneys [State Court Judge] Jeffery Arnold and Andrew Johnson. That Jeffery Arnold had made arrangements that no criminal proceedings would purse against Mayor Daisy Pray for her alleged felony criminal conduct, "if we get rid of Chief Quarterman." The fact that during this closed session city council meeting that Jeffery Arnold nor Mayor Daisy Pray brough up any of the allegation that were alleged against Chief Quarterman as an issue nor as the reasoning for his termination, but rather only that "the allegations against Mayor Daisy would go away," supports and substantiates the fact the proffered "termination basis was false….that retaliation was the real reason," and that facts support that the events [Letters of Reprimand, Suspension, Administrative Hearings] were in fact "pretexual" and that the City engaged in unlawful workplace retaliation.

Southern District of Georgia
Savannah Division

Page **2** of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

3. On February 7, 2018 Chief Quarterman e-mailed Mrs. Melissa Jones regarding his "request for overtime compensation" along with a detailed spreadsheet. Chief Quarterman did in fact "contend during his employment that as Chief of Police he was improperly classified as exempt or that he was entitled to overtime pay" by compiling the data [facts] on a spreadsheet and submitting it to the City. On February 15, 2018 Chief Quarterman received an e-mail from Mrs. Melissa Jones "deny" his claim. In her explanation Mrs. Melissa Jones intentional omitted that Chief Quarterman held several positions as well as additional duties. Chief Quarterman was also the and internal affairs investigator, and lead investigator, and functioned as a patrol officers, due to being undermanned, which is supported by his multiple arrests and successful convictions thereof. Chief Quarterman also operated as a patrol officer as evidenced by his login with 911 and traffic citations issued. Chief Quarterman filed his complaint on January 7, 2020 will within the two- and three-year statute of limitation from when he was "deny." (Exhibit "AH")

4. The Code of Ordinance of the City of Walthourville supersedes the Personnel Manual, and implies a contract of employment between the city and a city official who is not elected, more specifically to code refers to the Chief of Police. This implied contract grants a property right to Chief Quarterman's continued employment.

5. Chief Quarterman was denied a trial before a disinterested and impartial judicial officer as guaranteed by the Due Process Clause of the Fourteenth Amendment where he was compelled before administrative hearing on November 15, 2017 and an Adverse Action "Name-Clearing" before the mayor who was the "accuser" as well as the person of

Southern District of Georgia
Savannah Division                    Page **3** of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

interest in Chief Quarterman confidentially reporting alleged felony criminal conduct to District Attorney Tom Durden, who was the judicial officer.

## II.    Jurisdiction and Venue

6.  Plaintiff invokes the jurisdiction of this court pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §§ 1331 and 1343.

7.  This Court has authority to issue the requested declaratory relief under 28 U.S.C. §2201.

8.  This Court has authority to issue the requested injunctive relief under FED. R. CIV. P. 65 and 28 U.S.C. §1343(3).

9.  This Court is authorized to award the requested damages under 28 U.S.C. §1343(3).

10. This Court is authorized to award attorneys' fees under 42 U.S.C. §1988.

11. Because a substantial part of the acts and omissions that give rise to Plaintiff's claim occurred in this district, venue is proper pursuant to 28 U.S.C. §1391(b).

## III.    Identification of Defendants

12. The City of Walthourville is a body politic which is able to sue and be sued in its corporate name. *See City of Atlanta v. Brinderson Corp., 799 F.2d 1541, 1543 (11th Cir. 1986).*

13. Defendants are now, and at all times relevant hereto, have been employers as that term is defined by the FLSA.

14. Defendant, City of Walthourville, is one of seven municipalities in Liberty County, Georgia and is subject to the jurisdiction of this court.

Southern District of Georgia                                                    Bernie Quarterman v.
Savannah Division                        Page **4** of **94**       City of Wathourville, Georgia and
                                                                                            Daisy S. Pray,

individually

15. The City has adopted the policies and procedures described herein and is responsible for their enforcement against Bernie Quarterman.

16. Defendant, Daisy S. Pray, is/formerly the Mayor of the City of Walthourville. Defendant Pray controlled the Plaintiff and was one the individuals ultimately responsible for violating the FLSA anti-retaliation, hostile environment, and compensation provisions. Mayor Pray is/formerly responsible for the City's administration and policy-making, including the policies and procedures described herein and for their enforcement against Quarterman.

17. Defendant, Pray is a resident of Liberty County, Georgia and is subject to the jurisdiction of this court and is sued in her individual capacity.

18. Defendant, Melissa Jones, was formerly the City Clerk / Human Resource Administrator of the City of Walthourville. Defendant Jones controlled the Plaintiff and was one the individuals ultimately responsible for violating the FLSA anti-retaliation, hostile environment, and compensation provisions. Melissa Jones was formerly responsible for the City's administration and policy-making directly under Mayor Daisy Pray, including the policies and procedures described herein and for their enforcement against Bernie Quarterman.

19. Defendant, Jones is a resident of Appling County, Georgia and is subject to the jurisdiction of this court and is sued in her individual capacity.

20. Defendant, Jeffery Arnold was formerly the City Attorney of the City of Walthourville. Defendant Arnold directly influences, maliciously, controlled the Plaintiff and was one the individuals ultimately responsible for violating the FLSA anti-retaliation, hostile environment, and compensation provisions. Jeffery Arnold formerly responsible for directly influencing, maliciously, the City's administration and policy-making, including

Southern District of Georgia
Savannah Division

Page 5 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

the policies and procedures described herein and for their enforcement against Bernie Quarterman.

21. Defendant, Jeffery Arnold is a resident of Long County, Georgia and is subject to the jurisdiction of this court and is sued in his individual capacity.

22. Defendant, Andrew Johnson formerly the City Attorney of the City of Walthourville. Defendant Johnson directly influences, maliciously, controlled the Plaintiff and was one the individual ultimately responsible for violating the FLSA anti-retaliation, hostile environment, and compensation provisions. Andrew Johnson was formerly responsible of directly influencing, maliciously the City's administration and policy-making, including the policies and procedures described herein and for their enforcement against Bernie Quarterman.

23. Defendant, Johnson is a resident of Bryan County, Georgia and is subject to the jurisdiction of this court and is sued in his individual capacity.

24. Defendant City may be served by delivering a copy of the summons and complaint to City of Walthourville, c/o Daisy S. Pray, Mayor or Walthourville at 222 Busbee Road, Walthourville, Georgia 31333.

25. The City acquiesces in, sanctions, and supports Mayor Pray, Melissa Jones, Jeffery Arnold, and Andrew Johnson's enforcement of the City's policies and procedures described herein against Bernie Quarterman.

26. Defendant Pray may be served by delivering a copy of the summons and complaint to Daisy S. Pray, 170 Barnard Pray Rd., Allenhurst, Georgia 31301.

27. Defendant Jones may be served by delivering a copy of the summons and Amended Complaint to Melissa Jones, 203 Weatherly Dr., Baxley, Georgia 31513.

Southern District of Georgia
Savannah Division

Page **6** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

28. Defendant Arnold may be served by delivering a copy of the summons and Amended Complaint to Jeffery Arnold, 128 South Main Street, Hinesville, Georgia 31313.

29. Defendant Johnson may be served by delivering a copy of the summons and Amended Complaint to Andrew Johnson, 128 South Main Street, Hinesville, Georgia 31313.

30. Plaintiff was an employee as that term is defined by the FLSA and at all times material hereto was an employee of Defendants.

## IV     Statement of Facts

### Quarterman's Background

31. Quarterman is a native born and raised in Liberty, County Georgia. He completed high school in Hinesville, Georgia and Akron, Ohio. He then attended college and entered into the United States Army.

32. Quarterman has an associate in Criminal Justice, Bachelor of Management, Masters of Criminal Justice Administration with a focus on Homeland Security, and is currently working on his Doctorial in Criminal Justice Administration.

33. Quarterman began his military and law enforcement career working city, county, state, and international law enforcement. Obtaining positions of Officer, Agent, Investigator, Chief of Investigations, Deputy Station Commander, Station Commander and forwarding Operation Base Commander overseas.

34. Quarterman continued his law enforcement and military career as a Noncommissioned Officer in the United States Military as well as an organized crime investigator under the United States Department of State. International police advisor under the United Nations, Domestic Violence Investigator and Trainer under the Department of Defense in Kabul, Afghanistan holding positions of International Organized Crime Investigator, International Chief of Investigations, and Deputy and Station Commander under the

Southern District of Georgia
Savannah Division                          Page 7 of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Department of State  with the International Law Enforcement Division, in Pristina and
Podujevo,  Kosovo.

35. After 20 plus years of law enforcement and receiving Agents of the Year, Officer of the
Quarter, several Certificates of Appreciation and Accommodations and the completion of
sexual harassment certifications and duties with the United States Army Reserves. He
decided to continue his civilian law enforcement career with the City of Walthourville.

36. Mr. Quarterman began his career with the City of Walthourville Police as a patrol
officer.  After his first month of duty he was promoted to internal affairs investigator and
after approximately 3 ½ months was promoted to Captain/Asst. Chief of Police.  He was
then promoted to Chief of Police in 2015 holding the position until January 10, 2018.

37. During Mr. Quarterman's time in law enforcement and his current United States Military
Career he has never had a reprimand, disciplinary action, adverse action or any
questionable statements in his law enforcement, military, or employment files.

38.  Quarterman has never been accused of any wrong doings or violations until he reported
corruption, retaliation, abuse of powers/misuse of powers, criminal and illegal conduct by
the Mayor of the City of Walthourville, Daisy Pray, and  the City Clerk of
Walthourville, Melissa Jones, and being targeted with the assistance of the city attorneys
Jeffery Arnold and Andrew Johnson.

39. The City of Walthourville citizens, officers, city workers, other City of Walthourville
political figures, and religious leaders all appreciated the job Chief Quarterman and the
officers did while employed with the City of Walthourville so much that they presented
Chief Quarterman and the City of Walthourville police officers with an Outstanding
Appreciation Certificate of Appreciation just a few weeks before the targeting and
retaliation continued leading to his first suspension in November, 2017.

Southern District of Georgia
Savannah Division                           Page **8** of **94**                    Bernie Quarterman v.
                                                                       City of Wathourville, Georgia and
                                                                                      Daisy S. Pray,

individually

**The City Fires Quarterman**

40. On or about <u>January 3, 2014</u>, Quarterman was hired as an officer under Chief McFadden.

41. On or about <u>2014</u>, Mayor Daisy initiated an investigation, via the Walthourville Police Department ("WPD"), into James Henry to bring shame on his son, citizen Larry Baker, to prevent him from running against her in the 2016 Mayor Election. This was witnessed by Bernie Quarterman and Tracy McFadden.

42. On or about, <u>September 2015, December 2015, February 2016, November 2016</u>, and in <u>January 2017</u>, Mayor Daisy Pray requested, escalating to demanding, that the Chief Quarterman place illegal drugs in City Councilman Larry Baker's (currently the Mayor elect to be sworn in on January 13th, 2020) vehicle and then have a Walthourville Police Officer pull him over in order to arrest Larry Baker for the possession of a controlled substance. Chief Quarterman refused to do with every request. This was witnessed by the then City Clerk Shana T. Moss.
(Exhibit "A")

43. On or about <u>September 1, 2015</u>, Quarterman was promoted to be the Chief of Police for the City of Walthourville.

44. On or about <u>2016</u>, Mayor Daisy Pray initiated an investigation, via the Walthourville Police Department ("WPD"), into Lusciano Rodrigrious for running an illegal vehicle painting business. She had knowledge of the illegal business but wanted him cited and shut down because his illegal business did work for her husband and over charged her husband. This was witnessed by Officer Lee, Officer Burgess, and Chief Quarterman.

45. On or about <u>October 2016</u>, Officer Green resigned. This left one (1) part-time position vacant.

46. On or about <u>December 2016</u>, Officer Drummond resigned. This left one (1) part-time and now one (1) full-time position vacant.

Southern District of Georgia
Savannah Division

Page **9** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

47. On or about February 22, 2017, Shana Moss resigned as City Clerk/Human Resource Officer for the City of Walthourville.

48. On or about March 3, 2017, City Councilman Larry Baker, the victim, City Clerk Shana Moss and Chonte Wright, witnesses, requested that Sheriff Steve Sikes, GBI agent Tracy Sands, and District Attorney Tom Durden investigate the allegations about Mayor Daisy Pray's requests/demands to have drugs placed in Larry Baker's vehicle.

49. On or about March 2017, Melissa Jones was hired by Daisy Pray as City Clerk/Human Resource Officer for the City of Walthourville.

50. On or about March 2017, Chief Quarterman started requesting reports from Ms. Jones in reference to the Police Department Budget and actual expenses to include payroll. It was discovered that there were many discrepancies to include the fact that officers were not being paid overtime in accordance with Federal Law.

51. On or about March 17, 2017, Chief Quarterman spoke with District Attorney Tom Durden about beginning an investigation into Mayor Daisy Pray's requests/demands to have drugs placed in Larry Baker's vehicle and was told by Mr. Durden that he would address it after the current round-up that Chief Quarterman and other Investigators were currently completing. Chief Quarterman had spoken previous with Mr. Durden several times about the repeated request/demands made by Mayor Pray. Chief Quarterman was not aware of the fact that the samDirectivee request for an investigation had been made by the victim and witnesses as previously indicated until Chief Quarterman, Larry Baker, and Shana Moss meet for an pre-arraigned meeting at the Liberty County District Attorney's office to speak with Mr. Durden about the investigation into Mayor Daisy Pray in March 2018.

52. On or about May 2017, Mayor Daisy Pray threatened to shoot Chief Quarterman in the head. Sgt J. Burgess then expressed his concern for Chief Quarterman's safety with Clerk

Southern District of Georgia
Savannah Division                                Page 10 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,
individually

Shelly Cardell, Officer Wright, and Officer Lee. This was witnessed by Sgt. J Burgess. (Exhibit "B")

53. On or about <u>May 2017,</u> Mayor Daisy Pray threatened to "take a hit out" on anyone who inquired about the City Budget. This was witnessed by Sgt. J Burgess and Chief Quarterman of which GBI agent Tracy Sands was notified of all threats.

54. On or about <u>June 9, 2017,</u> Chonte Wright was terminated by Mayor Daisy Pray and Melissa Jones for allegedly increasing an employee's pay. The witnesses all indicated that Mrs. Moss, the previous clerk, assisted Mrs. Lewis in applying the raise for said employee after it had been approved by Mayor Daisy Pray, as was reported on the incident report. Mayor Daisy Pray and Ms. Jones approached Chief Quarterman and requested that the official police report be altered by removing the witnesses' statements. Chief Quarterman denied the request and reflected such as a supplemental to the report.

55. On or about <u>July 20, 2017,</u> Officer Lee filed an action in Federal Court to recover the unpaid overtime. After settling this actBoardion all the officers were paid back pay for unpaid overtime. It was after this action that Officer Lee became a focus for Mayor Daisy Pray and Melissa Jones.

56. On or about <u>July 23, 2017,</u> Chief Quarterman emailed Mayor Daisy Pray expressing the need to fill the one (1) full-time and one (1) part-time vacant positions. At this time Melissa Jones who was also the Human Resource Officer had not filled the vacant positions.

57. On or about <u>August 1, 2017,</u> Chief Quarterman accepted a Garnishment Action serving for Officer Lee. He made a copy for Officer Lee and then sent the original to City Hall through the "Inter Office" envelope. The accepting of servicing, coping, and placement of the document into the "Inter Office" envelope took place in the Clerk/Officer's shared office, as had been standard procedure. This was witnessed by Shelly Cardell.

Southern District of Georgia
Savannah Division

Page **11** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

58. On or about <u>August 5, 2017</u>, Chief Quarterman emailed City Clerk Melissa Jones requesting overtime due to the WPD being understaffed. At this time Melissa Jones who was also the Human Resource Officer had not filled the one (1) full time and one (1) part time vacant positions.

59. On or about, <u>August 2017</u>, Officer Long resigned leaving the Wathourville Police Department short over one third (1/3) of the entire department with two (2) full time and one (1) part time position vacant. This means the City was requiring four (4) officers to cover the shifts of what previously (7) officers were covering.

60. On or about <u>August 14, 2017</u>, Chief Quarterman emailed Mayor Daisy Pray expressing the need to fill the two (2) full-time and one (1) part-time vacant positions.

61. On or about <u>August 16, 2017</u>, an INTEROFFICE MEMO was sent out by Mayor Daisy Pray, as follows:

> Effective August 16, 2017, all overtime must be approved by the Human Resources Administrator, Melissa A. Jones. Overtime must be approved by Ms. Jones prior to being worked. For public works and city hall overtime is defined as hours worked more than 40 in the seven-day work period. Overtime is defined as those hours more than 53 per week, in an established 14-day work period for the fire department. Overtime is defined as those hours more than 43 per week, in established 14-day work period for the police department. Failure to comply with this memo will result in disciplinary action.
> (Exhibit "C")

62. The Fire Department, which is a predominately voluntary, was allowed 106 hours per 14-day period with any additional hours then being considered overtime whereas the Police Department was allowed 86 hours per 14-day period.

63. Mayor Daisy Pray placed this Overtime restriction with full knowledge that the only department that was severely understaffed was the Police Department.

64. Mayor Daisy Pray allowed the Fire Department 20 more hours per 14-day period than the Police department, with full knowledge that the Police Department was understaffed.

Southern District of Georgia
Savannah Division                    Page **12** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

65. Mayor Daisy Pray had full knowledge that it was the responsibility for the Human Resource Officer Melissa Jones to hire officers for the vacant positions, however they were NOT being filled. In the Proposed Letter of Reprimand dated October 27, 2017, Ms. Jones stated that "when positions have become available within the City, they are applied for by many qualified applicants." Such strict Overtime restrictions were placed on the Police Department while two (2) full-time and (1) part-time positions, which was three (3) out of the seven (7) positions that the Police Department had available, were left vacant by Ms. Jones.

66. Mayor Daisy Pray had full knowledge that if the police Department had a full staff of seven (7) officers that Overtime would not be necessary.

67. On or about August 17, 2017, Chief Quarterman emailed City Clerk Melissa Jones requesting overtime due to the WPD being understaffed. Ms. Jones never replied to the email request. This request for overtime was to allow there to be only one officer on duty per shift covering the entire city, as well as have all officers present for court proceedings. (Exhibit "D")

68. On or about August 19, 2017, Chief Quarterman emailed City Clerk Melissa Jones requesting overtime due to the WPD being understaffed. Ms. Jones never replied to the email request. This request for overtime was to allow there to be only one officer on duty per shift covering the entire city, as well as have all officers present for court proceedings. (Exhibit "E ")

69. On or about August 20, 2017, Chief Quarterman emailed City Clerk Melissa Jones requesting overtime due to the WPD being understaffed. Ms. Jones never replied to the email request. This request for overtime was to allow there to be only one officer on duty per shift covering the entire city, as well as have all officers present for court proceedings. (Exhibit "F")

Southern District of Georgia
Savannah Division                    Page 13 of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

70. On or about <u>August 22, 2017</u>, the new Personnel Manual took effect. This new Manual was custom written by Mayor Daisy Pray and Melissa Jones.

71. On or about <u>August 24, 2017</u>, Chief Quarterman emailed City Clerk Melissa Jones requesting overtime due to the WPD being understaffed. Ms. Jones <u>never replied</u> to the email request. This request for overtime was to allow there to be only one officer on duty per shift covering the entire city, as well as have all officers present for court proceedings. (Exhibit "G")

72. On or about <u>August 25, 2017</u>, Chief Quarterman received his 1st Disciplinary Action Record. (Exhibit "H")

73. After receiving this Disciplinary Action Record, Chief Quarterman requested an Appeal of Disciplinary Action Form, as the disclosure indicated to do at the bottom of the Disciplinary Action Record. Mr. Jones informed Chief Quarterman that under the new Personnel Manuel that he was no longer granted a grievance process for this allegation. (Exhibit "I")

74. On or about <u>September 1, 2017</u>, Chief Quarterman emailed City Clerk Ms. Jones requesting overtime due to the WPD being understaffed. Ms. Jones <u>never replied</u> to the email request. This request for overtime was to allow there to be only one officer on duty per shift covering the entire city, as well as have all officers present for court proceedings. (Exhibit "J")

75. On or about <u>Oct 2017</u>, City Attorney Jeffery Arnold requested that the City Council and Mayor hold an executive session. At this executive session, Mr. Arnold informed the City Council and Mayor Daisy Pray that he received information that Chief Quarterman had reported corruption on Mayor Daisy Pray. At this time, Chief Quarterman was unaware of how Jeffery Arnold received this confidential information that Mr. Arnold had disclosed to Mayor Daisy Pray, in reference to her alleged criminal conduct, and within a few days he received the following Adverse Action.

Southern District of Georgia
Savannah Division
Page **14** of **94**
Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,
individually

76. On or about <u>October 15, 2017</u>, Chief Quarterman received the 2nd Notice of Proposed

Adverse Action executed by Mayor Daisy Pray for the following:

> On August 16, 2017 all department heads were notified via interoffice
> memo that all overtime in the City must be pre-approved by Ms. Melissa
> Jones prior to it being worked. You were personally informed of this policy
> by Mayor Daisy Pray…in a meeting attended by you (Quarterman), as well
> as Ms. Melissa Jones and the City Attorney. However, despite these two
> explanations and directions regarding City Policy, officers of your
> department continue to accrue overtime at an alarming rate. As an example,
> Latarshia Lee accrues 121 regular hours for the period between September
> 27 and October 10, 2017. SGT Wright accrued 98 during the same period.
> This is despite the fact that Officer Lee has filed a claim with the City for a
> violation of the Federal Overtime Laws and it was explained to you the
> reason and importance of the policy.
> Any oral conference that you request will be conducted by Mayor Daisy
> Pray at her discretion within the next fourteen (14) days. Your written
> and/or oral reply must be received by 17:00 <u>October 18, 2017.</u>
> Consideration will be given to extending this time period if you submit a
> written request to Ms. Melissa Jones stating your reasons for desiring more
> time within the time frame specified above.
> (Exhibit "K")

77. On or about <u>October 24, 2017</u>, Chief Quarterman's Attorney Solomon Amusan submitted

his Response to the 2nd Notice of Proposed Adverse Action executed by Mayor Daisy

Pray, as follows:

> As you are aware, since Officer Long's resignation the Police Department
> has been short (2) two full-time officers and (1) one part-time officer. This
> constitutes over (1/3) one-third of the entire department.
> It is Human Resources responsibility to fill the vacant positions. The Chief
> have requested on several occasions that these positions to be filled are
> expedited since June, thus reducing the necessity of over time.
> The Chief has informed Ms. Melissa Jones by email to her on August 5th,
> 2017 about the necessity for over-time due to lack of man power in the
> Police Department. On August 14th, 2017 Chief's email to you was about
> the necessity of filling the vacant positions and what the strain of being
> under staffed has been for such a small Police Department. (refer to emails)
> Chief sent emails to Mr. Jones on August 17, 19, 20, 24, and September 1,
> in reference to the necessity of over-time due to the department being under
> staffed (refer to emails)
> It is our understanding that the claim filed by Officer Lee was in reference
> to overtime pay which is not handled by the Police Department, but rather
> the City Payroll and Human Resources responsibility. As well as ensuring

Southern District of Georgia
Savannah Division                          Page **15** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

compliance with all Federal Compensation Law. (See attached Over-Time Explained Memo)

Please find the following request for information:

1. At this time Chief is requesting a full copy of the "evidence file."
2. At this time Chief is requesting "further explanation" for the reasons for the proposed action.
3. At this time Chief is requesting to be represented by an attorney.
4. At this time Chief is requesting additional time before a hearing to confer with counsel.

The Chief enjoys being part of the team moving forward to make the City of Walthourville a safer and better community for all of its citizens. (Exhibit "L")

78. On or about October 27, 2017, Chief Quarterman received the 3rd Notice of Proposed

Letter of Reprimand executed by City Clerk Melissa Jones for the following:

Within the last week, we have become aware of two separate issues which show your apparent disregard for the rules and regulations of the City of Walthourville and cast doubt on your ability to manage the Walthourville Police Department. Specifically, these are your failure to follow City Protocol in regards to the service of the Summons and Complaint regarding Officer Lee and the apparent lack of certifications of Officer Lee. Both of these issues are discussed separately herein.

On or about August 1, 2017 you were served by a deputy of the Liberty County Sheriff's Department with a service packed for Officer Lee. You did not inform anyone of your receipt of these papers, and they remained on your desk for over a month, long after the time in which the City was legally required to file an answer to the lawsuit...

As you are no doubt aware, the City of Walthourville recently settled a Federal Wage & Hour claim regarding past due overtime given to officer Lee. In our review of the matter, we learned that Officer Lee has failed her Radar Certification twice and has not been authorized to run radar within the City of Walthourville since she began working here over two years ago. Taking into account that Officer Lee will often work over 100 hours in a pay period, we question what duties she is actually performing on the road. We also question why this information was not brought to the attention of the Mayor and Council. When positions have become available within the City, they are applied for by many qualified applicants.

Please advise as to the status of Officer Lee's certification and advise as to the current training level of all the current police officers. (Exhibit "M")

79. On or about October 30, 2017, Chief Quarterman submitted a request for Appeal which

included the following response to the two (2) allegations:

Southern District of Georgia
Savannah Division

Page 16 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

I did sign on behalf of a servicing for Officer Lee. I then made a copy of the documents for the Office Lee and then place the originals in the "Inter Office" envelope to be delivered to City Hall, as is our policy.
Radar certification is not a requirement for Officer Lee's position.
Officer Lee has been an intrigue part in maintaining the safety and security of the City of Walthourville. She has performed her duties and responsibilities in a verity of capacities to aid and assist in preventing crime, in the arrest and prosecution of offenders, as well traffic violations, with a very high success rate which is reflected in the decrease in the crime rate while Officer Lee has been working here over the last two years.
Per your request, I am providing the current training level of all of the current, new, and potentially new officers.
(Exhibit "N")

80. On or about November 1, 2017, Chief Quarterman received the following letter:

You were previously served with a notice of Proposed Action. Within the Notice, you were given until 17:00 October 18, 2017 to respond in writing or orally and to request a hearing. Through your attorney, you requested an extension. We gave you until October 25, 2017 to respond to the Notice, which your attorney did on that date. Although you did not specifically request a hearing within your response, we have scheduled a hearing for **Wednesday, November 8, 2017 at 1:00 p.m.** in the conference room at Walthourville City Hall.
If you want to schedule a time prior to then to review your file and the evidence against you, I am available today and tomorrow if you and your attorney would like to schedule a time.
(Exhibit "O")

81. On or about November 6, 2017, Chief Quarterman's Attorney Solomon Amusan

submitted the following letter:

We are in receipt of your November 1, 2017, Notice of proposed Hearing scheduled for Wednesday, November 8, 2017 at 1:00 p.m..
**PREREQUISITE:** Please refer to our letter dated 11/06/2017 renewing our request for production of "evidence file" and our request for "further explanation" for the reason of the proposed action. We asked for no hearing in our response because **due process** calls for disclosure of this information prior to a hearing. Please produce.
**CONFLICT:** Moreover, please be advised that Counsel has a conflict in schedule to the proposed date of hearing. Counsel will appear for a BENCH TRIAL before the Glynn County Magistrate Court in MG17.01445.
The Chief enjoys being part of the team moving forward to make the City of Walthourville a safer and better community for all of its citizens.
(Exhibit "P")

Southern District of Georgia
Savannah Division                              Page **17** of **94**                              Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

82. On or about <u>November 8, 2017</u> the City proceeded with a Hearing without Chief
    Quarterman nor his Attorney present and suspended Chief Quarterman with pay. At this
    time neither Chief Quarterman nor his attorney were provided a copy of the "evidence
    file" nor "further explanation."

83. On or about <u>Thursday, November 9, 2017 at 6:59 a.m.</u>, the following email was sent to
    Attorney Andrew Johnson, Ms. Melissa Jones, and Mayor Daisy Pray:

    Please see above my CONFLICT in schedule for this 9:00 a.m. 11/09/17
    schedules Proposed Adverse Action Hearing in the above case.
    I am the Lead Counsel in all these cases.
    I RESOLVE TO APPEAR FOR MEDIATION AND THEN STATE AND
    RECORDER's COURT
    Please reschedule this matter for the next available date.
    (Exhibit "Q")

84. On or about <u>Thursday, November 9, 2017 at 8:21 a.m.</u>, the following email
    reply was sent from Attorney Andrew Johnson:
    The hearing will continue as scheduled. You were notified on Monday
    afternoon that we would accommodate your conflict in Chatham County on
    Wednesday, despite the fact we were not obligated to. Within the same e-
    mail, we let you know of the new date and time of the hearing. Now, with less
    than an hour to go before the hearing, we are being notified that you are not
    able to appear. This matter has dragged on for several weeks now as we have
    accommodated your multiple request. The City, the citizens of Walthourville,
    and even your client, deserve finality. Myself, the Mayor, and Melissa Jones
    will be at the Walthourville City Hall at 9:00.
    (Exhibit " R")

85. On or about <u>November 11, 2017</u>, City Clerk Melissa Jones sent notice of the hearing set
    for 4:00 pm on November 15, 2017.

86. On <u>November 14, 2017</u>, Chief Quarterman's Attorney teleconferenced with City Clerk
    Melissa Jones to schedule to review the 2nd "evidence file" 1:00pm on November 15,
    2017 at the Walthourville City Hall, three (3) hours prior to the scheduled hearing. Chief
    Quarterman nor his attorney were never provided a copy of the "evidence file" prior to
    this, although it had been requested.

Southern District of Georgia
Savannah Division

Page **18** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

87. On or about <u>November 15, 2017</u>, there was an administrative hearing. Upon arrival Chief Quarterman and his attorney discovered that Mayor Daisy Pray would be presiding over the hearing and NOT an impartial decisionmaker. At the hearing the City Attorney Jeffery Arnold also stated that "in these administrative hearings…he [Quarterman] doesn't necessarily have right to counsel. That is something that the Mayor permits." All responses to the allegations as well as supporting documentation had already been submitted to Mayor Pray and Melissa Jones.

88. Chief Quarterman did agree to resolve the issues by agreement because it became clear that the outcome had already been decided collectively by City Attorney Jeffery Arnold and Mayor Daisy Pray and that Chief Quarterman would be found at fault regardless of the facts or evidence. The hearing itself was just a formality.

89. On or about <u>November 22, 2017</u>, Chief Quarterman received a Final Letter of Suspension as follows:

> This letter confirms the result of the hearing held at City Hall at 4:00 p.m. on November 15, 2017. As part of the overall negotiated resolution to all pending matters, agreed to accept a three-day, unpaid suspension. The suspension starts on November 17, 2017 and ends on November 21, 2017. The reason for the suspension is outline in the initial Letter of proposed Adverse Action.
> This Letter of Suspension, along with the initial Letter of Proposed Adverse Action will be placed in your file and become a permanent part thereof.
> (Exhibit "S")

90. On or about <u>November 29, 2017</u>, Chief Quarterman received a Final Letter of Reprimand as follows:

> This letter confirms the result of the hearing held at City Hall at 4:00 p.m. on November 15, 2017. As part of the negotiated resolution to your proposed suspension, you stipulated and agreed to the following action and the receipt of this letter.
> 1. On or about August 1, 2017, you were served by a deputy of the Liberty County Sheriff's Department with a service packet for a wage garnishment of Officer Lee. Despite directives within the Walthourville Personnel Manual, you claim to have placed the materials within an inter-office mail packet. Regardless of what may have happened to these papers, you stipulated and agreed that your handling of these materials was negligent.

In the future, you will follow the directives of the Walthourville Personnel Manuel and only accept service if same is forced upon you. In the event you have no choice but to accept a service packet you will ensure that it is delivered to the proper individual(s).

2. You agreed that the training and qualifications of Officer Lee have been deficient in regards to her RADAR and/or LIDAR certification. Within seven (7) days of the receipt of this letter, you are to provide a proposed training/certification schedule for Officer Lee with the object of having her certified as soon as practical. Within sixty (60) days of your receipt of this letter, you are to provide a training/certification schedule for the entire department.
This Letter of Reprimand will be placed in your personnel file and become a permanent part thereof.
(Exhibit "T")

91. On or about <u>December 7, 2017</u>, the Training Plan: Radar 12-7-2017 was submitted and stated as follows:

Ofc. Lee lesson plan for attending RADAR/LIDAR certification. For each step the prior step has to be completed. Please go over each step to make sure each portion of step is completed before continuing on the next step.
(Exhibit "U")
See Statement of Ofc. Lee (Exhibit "V")
See Statement of Ofc. Wright (Exhibit "W")

92. On or about <u>December 2017</u> City Attorney Jeffery Arnold requested that the City Council and Mayor hold an executive session. At this executive session, Mr. Arnold informed the City Council and Mayor Daisy Pray that if they got rid of Chief Quarterman then all the questions about corruption and the budget would go away. Mr. Arnold said that he consulted with District Attorney Tom Durdan and NAACP President Graylyn Quarterman and that they both agreed with him.

93. On or about <u>December 21, 2017,</u> shortly after this meeting Chief Quarterman was called into City Hall in front of Mayor Daisy Pray, Melissa Jones, and City Councilwoman Patricia Green and was suspended for a second time, without notice or a hearing.

94. On or about <u>December 27, 2017</u>, Chief Quarterman received an Amended Proposed Adverse Action as follows:

This proposed adverse action is based on the following allegations:

Southern District of Georgia
Savannah Division                           Page **20** of 94                          Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

On November 15, 2019, a hearing was held at the Walthourville City Hall regarding (1) a letter of Proposed Suspension and (2) a Proposed Letter of Reprimand. After testimony was taken, an agreement was reached between yourself and the City, where you acknowledged the misconduct leading to the two adverse actions and agreed to accept the Suspension and the Letter of Reprimand. Specifically, you agreed to the following:

1. That the policy of the City of Walthourville, as directed by the Mayor, required that all overtime must be approved in advance, in order for the City of Walthourville to maintain accurate and complete salary records. You agreed having knowledge of the policy, that you violated the policy, and that in the future you would abide by the policy. Regardless, in the two-week period immediately after your return to work (November 22-December 5), the department logged over 60 hours of overtime. No pre-approval for this overtime was requested.

2. That in order to promote the efficiency of the department, you agreed to provide a training schedule for a police officer within seven (7) days of the hearing with the goal of having that officer trained and certified to operate RADAR or LIDAR so that the police officer would be expected to perform all needed law enforcement duties. However, upon your return to work, you instead wrote the Mayor a letter indicating your refusal to provide such a schedule.
   **AMENDEDMENT:** Allegedly, this same officer was previously suspended by POST for failing to complete her annul training. Despite the fact that you were provided written notice of the suspension on or about February 3, 2016, the officer logged 96 hours for the pay period between 2/3/16 and 2/16/16. Pursuant to OCGA 35-8-21(d) and (g), this officer would have been without powers of arrest and have been unable to perform her duties as on officer of the City of Walthourville. Allowing her to work during this period potentially opened up the City to liability for any potentially illegal arrest or stops she may have made during this period.
   In addition, the following issues have arisen:

1. It has been alleged that a police officer is writing speeding tickets, despite the fact that he is not LIDAR or RADAR certified. To our knowledge, the police officer has signed a total of nine (9) speeding tickets, indicating that he clocked the majority of their speed by laser. This is not permissible under the POST standards governing our police officers and the City of Walthourville is potentially liable for this alleged misconduct.

2. You have failed to get the Municipal Court Clerk entered into the GETS computerized records systems. The clerk has continuously requested that you enter her into the system so that she may perform her job by conducting background checks and checking for outstanding warrants. Because this has not been done, the clerk has been sending individuals to the Liberty County Sheriff's Office or Hinesville Police Department for the requested reviews. The Clerk's position is an important segment of the law enforcement team, and it is vital to the City that she be permitted to do her job. It appears that this deficiency has been existing for the last thirty (30) days.

Southern District of Georgia
Savannah Division

Page **21** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

(Exhibit "X")

95. On or about <u>January 2, 2017</u>, Chief Quarterman submitted his request for Appeal as

follows:

> I did not resume any duties or shifts until Monday, November 27th, 2017. I
> was officially suspended on November 9th, 2017 at which Mayor Daisy Pray
> appointed Sgt. Wright as interim Chief. The interim Chief Wright drafted the
> Shift Schedule for the remaining month of November and submitted it to Mrs.
> Melissa Jones. This submitted November Shift Schedule remained in effect
> after my return to duty on November 27th, 2017. I did draft the December
> Shift Schedule, without the necessity of overtime. This December Shift
> Schedule was provided to Mrs. Melissa Jones.
> On December 7th, 2017 a "Training Plan" was provided to Mrs. Melissa Jones.
> I am unaware of any officer writing speeding tickets who is not certified. At
> this time, I am requesting a copy of the alleged (9) speeding tickets as well as
> a copy of the associated offices POST certification.
> On December 12, 2017 Mrs. Chanda Taylor was notified by email from Mrs.
> Branson that the process was initiated and that to "allow 10-12 business days"
> (Exhibit "Y")
> See Attached Training Schedule for November (Exhibit "Z")
> See Attached Training Schedule for December (Exhibit "AA")

96. On or about <u>December 26, 2017</u>, Ms. Taylor received an email from Mrs. Branson as

follows:

> Ms. Taylor,
> Please review the contents of this email as it acknowledges a system error
> in the processing of the SSL VPN request dated 12 December 2017.
> The system generated GETS request number is missing. A cursory check of
> the system revealed the error. The request was resubmitted and the new
> request is outlined below:
> GETS will request an expedite as this is a system error at NO fault of the
> agency.
> (Exhibit "AB")

97. After receiving a copy of the alleged ticket that were written by an officer not LIDAR

certified. Chief Quarterman discovered that they were written by Officer Deliford.

Officer Deliford had just completed his training for his LIDAR certification. As is

required these tickets were issued under the observation of Sgt. Wright, as indicated on

the citations themselves. This is part of the requirements for completing the packet that

Southern District of Georgia                                                          Bernie Quarterman v.
Savannah Division                        Page **22** of 94                City of Wathourville, Georgia and
                                                                                              Daisy S. Pray,

individually

then has to be submitted to complete the certification process. This packet was submitted after it was completed with said tickets and Officer Deliford did become certified.

98. On or about January 10, 2018, there was an administrative hearing. Upon arrival Chief Quarterman discovered that Mayor Daisy Pray would be presiding over the hearing and NOT an impartial decisionmaker. At the hearing, Chief Quarterman requested a continuance as he had several times since he was just given notice of the hearing on January 5, 2018 and the "evidence packet" on January 8, 2018. All responses to the allegations as well as supporting documentation had already been submitted to Mayor Pray and Melissa Jones. As it was in the first hearing, it had already been decided collectively by City Attorney Jeffery Arnold and Mayor Daisy Pray and that Chief Quarterman would be found at fault regardless of the facts or evidence. The hearing itself was just a formality.

99. NO testimony was given, NO evidence was submitted. The hearing was basically a monolog given by City Attorney Jeffery Arnold. At the end of the hearing Jeffery Arnold, the City Attorney, stated that Mayor Daisy Pray would make her decision.

100.    Later that evening the News stated that Chief Quarterman had been terminated for violating policy. At NO point was Chief Quarterman ever directly or indirectly informed that he had been terminated.

101.    On or about January 11, 2018, Chief Quarterman received a letter of Termination of Employment.

Summary Time-Line of Retaliation

102.    Summer 2014 Mayor Daisy Pray requested the Walthourville Police Department start an investigation on Walthourville City Councilman James Henry cited he was selling illegal alcohol from his resident.

103.    September 2015     Daisy Pray as she was swearing me in as Chief of Police stated: one of your duties is to get something on Larry Baker" Chief Quarterman states "Mayor if he is doing something wrong he will be gotten"

Southern District of Georgia
Savannah Division                    Page 23 of 94                    Bernie Quarterman v.
                                                                       City of Wathourville, Georgia and
                                                                       Daisy S. Pray,

individually

104.     2016   Mayor Daisy Pray requested an investigation be open on Luciano Rogridues for operation an illegal paint shop

105.     October 2016  Daisy Pray request Chief Quarterman and Clerk Shana Moss into the Waltourville City Hall meeting room and strongly demand both of them to find some way to plant drug in Larry Baker vehicle and have him stop and arrested.

106.     January 2017  While receiving undercover funds for an undercover operation. Mayor Daisy Pray asked "do we have anything on Larry Baker?" Chief Quarterman replied " no maam we set up surveillance, I just do not see the boy selling narcotics" Mayor Daisy Pray stated "get something on him even if you have to go through his brother, I know he sell dope and have been forever."

107.     March 3rd ,2017        Clerk Shanna Moss, Walthourville City employee Chonte Wright and Larry Baker meet with Liberty County Sheriff Steve Sikes and Georgia Bureau of Investigation Agent Tracy Sands and report that Mayor Daisy pray throughout 2015 -2016 have been pressuring Chief Quarterman and City Clerk Shana Moss to plant drugs in Larry Baker vehicle and have stop and arrested.

108.     Mid-March 2017        Chief Quarterman met with District Attorney Tom and briefed him on the current narcotic investigation and preparation for the round up and update on criminal conduct on Mayor Daisy Pray. District attorney Tom Duren instructed Chief Quarterman continue with warrant and conduct the round up and He will make plans to pick and question Mayor Pray later.

109.     Late-March 2017        Mayor Daisy Pray begin extremely harsh to Chief Quarterman citing she was upset because of Chief and Sergeants were asking questions of clarification of the Police Department budget

110.     April 2017        Mayor Daisy Pray and Clerk Melissa Jones met with Chief Quarterman at Frazier Park in Walthourville Georgia. Pray and Jones approached Chief in an aggressive way stating, "you leave that budget alone, you do police work and we will handle the budget" Both of them repeated this several times. Mayor Daisy Pray stated: and I got ear out there and know when someone report something". Sgt Jerald Burgess witnesses this meeting.

111.     Late-April 2017        Mayor Daisy Pray and Clerk Melissa Jones met with Chief Quarterman Sgt. Burgess and discussed budget document.

Mayor Pray called Chief Quarterman and Sgt Burgess to her away from the small crowd. Mayor Pray stated, "Chief, if you keep asking about this budget, I am going to take Sgt Burgess gun and blow your head off and I will put a hit on anyone who ask about this budget."

112.     End -April 2017        Chief Quarterman Call GBI agent Tracy Sands informed him of the threats he receive from Mayor Daisy Pray and told that he was concern for his

Southern District of Georgia
Savannah Division                  Page 24 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

safety and ask for an investigation and also told him she has been acting strange and very hash since around March 2017. GBI Sand replied "she is your boss, keep me informed."

113.   Beg.-August 2017     Chief Quarterman, FBI agent Douglas Dye, and FBI agent Andy met with District Attorney Tom Durden in reference to initiating a formal investigation into Mayor Daisy Pray's felony criminal conduct, but it was up to Durden to approve it.

114.   August 16, 2017     all the department heads were notified via interoffice memo that all overtime in the City must be pre-approved by Ms. Melissa Jones prior to it being worked

115.   August 21, 2017     You were personally informed of this policy by Mayor Daisy Pray in a meeting attended by you, as well as Ms. Melissa Jones

116.   August 22, 2017     New Personnel Manual took effect that Mayor Daisy Pray and Mrs. Melissa Jones custom modified and wrote. (This removed the City Council authority with City Personnel)

117.   August 25, 2017     Chief Quarterman received his first *Disciplinary Action Record* in over 25 years of law enforcement.

118.   September 2017     Chief Quarterman was directed to come alone to a meeting with Mayor Daisy Pray, City Attorney Jeffery Arnold, and Mrs. Melissa Jones at which time he was asked "What do you want?" Chief Quarterman replied, "Do the Right Thing." That concluded the meeting.

119.   End-September 2017   Chief Quarterman, FBI agent Douglas Dye, and Grayln Chief Quarterman met with District Attorney Tom Durden for a second time in reference to initiating a formal investigation into Mayor Daisy Pray's felony criminal conduct, but it was up to Durden to approve it.

120.   October 2017   City Attorney Jeffery Arnold announce in a closed secession city council meeting that allegation of unethical and criminal conduct had been reported by Chief Quarterman on Mayor Daisy Pray

121.   October 15, 2017     Chief Quarterman received his *1st Notice of Proposed Adverse Action*.

122.   October 27, 2017     Chief Quarterman received his *2nd Proposed Letter of Reprimand*

123.   End-October 2017     Chief Quarterman met with District Attorney Tom Durden in the evening to inform him of detail of Mayor Pray's activity. While Chief Quarterman was meeting with Durden, Sgt. Wright call Chief Quarterman and informed him that Mayor Daisy Pray, Councilwoman Patricia Green and Melissa Jones had gain entry into

Southern District of Georgia
Savannah Division                          Page **25** of **94**                 Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

the Chief's office and was look through confidential informant and investigative files. Chief Quarterman inform District Attorney Tom Durden of this and ask him could he instruct them to leave the office for the security of the investigative information and safety of the confidential informants.

124.  November 8th, 2017   Chief Quarterman was suspended

125.  November 15, 2017   Administrative Hearing for Chief Quarterman

126.  November 17-21, 2017          Chief Quarterman was Suspended for (3) three days

127.  November 22-26, 2017          Chief Quarterman took Vacation Days

128.  December 2017          To be more "head on" as Jeffery Arnold stated [overt act] in another closed session with the City Council Members that "if Chief Quarterman is terminated then all the allegations against Mayor Daisy Pray would go away." That Jeffery Arnold had made arrangements that no criminal proceedings would purse against Mayor Daisy Pray for her alleged felony criminal conduct, "if we get rid of Chief Quarterman."

129.  December 21, 2017   Chief Quarterman received his *3rd Proposed Adverse Action* and Suspended until January 8th, 2018.

130.  January 10, 2017   Administrative Hearing and Termination

Quarterman Files EEOC Complaint & Whistleblower Complaint

131.      Plaintiff Chief Quarterman brought his claim upon which relief may be granted,

with regard to his claim that he was intentionally retaliated against in violation of the

FLSA, by Mayor Daisy Pray and supported by city employees and appointees. Chief

Quarterman "head asserts" that "he was retaliated against in violation of the FLSA", as

the facts "to make plausible that he was discharged [and] discriminated against because

he filed a complaint or instituted or caused to be instituted [as a confidential

informant/witness, bound officer of the law, reported the alleged felony criminal conduct

of Mayor Daisy Pray to District Attorney Tom Durden] a proceeding under or related to

the FLSA." This is when Chief Quarterman became the focus of Mayor Daisy Pray's

Southern District of Georgia
Savannah Division                    Page 26 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

revenge. The "material facts" show that as a resultant "the 'immediate cause of [his] discharge [was] retaliation.'" This can be implemented through direct or circumstantial evidence. It was at this point that the conspiracy/coelution began with Mayor Daisy Pray, City Clerk Melissa Jones, and City Attorneys [State Court Judge] Jeffery Arnold and Andrew Johnson. That Jeffery Arnold had made arrangements that "all the inquiries about the city finances will go away," the inquiries into criminal proceedings against Mayor Daisy Pray for her alleged felony criminal conduct as well, "if we get rid of Chief Quarterman."

132.     Audio voice recording, transcript, of Chief Quarterman and City Council Larry Baker on January 19th, 2018, as follows:

| | |
|---|---|
| 2:30 sec Quarterman: | Hey um rev, um um Reverend Anderson said that through that ah that December Executive session, I think you confirm it at your house that day too |
| 2:44 sec Baker: | ummm |
| 2:44 sec Quarterman: | that Jeffrey Arnold said get rid of Chief Quarterman and all the inquiries about city financial will go away. |
| 2:53 sec Baker: | Yes sir, confirmed |
| 2:55sec Quarterman: | I thought so |
| 2:57 sec Baker: | confirmed |
| 2:59 sec Quarterman: | now he supposed to be the advisor for the city not a dictator to oust the chief |
| 4:02 sec Quarterman: | Now can you write a eventually can you write a statement to that, what Jeffrey Arnold did in the Executive Session. |
| 4:06 sec Baker: | yes sir |
| 4:07 sec Quarterman: | ok |
| 4:07 sec Baker: | yes, sir and we and at one time we were recording council meeting |
| 4:12 sec Quarterman: | un huh |
| 4:12 sec Baker: | But of course they not going to be recording nothing |
| 4:14 sec Quarterman: | ok |
| 4:14 sec Baker: | I'll write a statement, I will write a statement, yes sir |

133.     The fact that during this closed session city council meeting that Jeffery Arnold nor Mayor Daisy Pray brough up any of the allegation that were alleged against Chief

Quarterman as an issue nor as the reasoning for his termination, but rather only that "the

allegations against Mayor Daisy Pray would go away," supports and substantiates the fact

the "proffered termination basis was false....that retaliation was the real reason," and that

facts support that the events [Letters of Reprimand, Suspension, Administrative

Hearings] were in fact "pretexual" and that the City engaged in unlawful workplace

retaliation.

134.     On or about <u>October 18, 2017,</u> Chief Quarterman filed An EEOC complaint, 415-
2018-00051, as follows:

> I believe I have been discriminated against on the basis of retaliation, for
> opposing what I reasonably and good faith believe to be unlawful
> employment actions, in violation of Title VII of the Civil rights Act of 1964,
> as amended.
> (Exhibit "AC")

135.     In or about <u>October 2017,</u> Chief Quarterman filed a Whistleblower Complaint for

harassment / intimidation, OMB# 1218-0236, as follows:

> *Mayor demanding DRUGs be placed in City Council member's vehicle
> *Mayor demanding investigations into citizens for personal reasons
> *Threaten to be shot in the head and a hit on me * Pressured to go on
> vacation for asking budge questions * Failed to place police ads and fill
> vacancies obstructing security * Prolonging the hiring process after multiple
> request * Reprimanded for allowing a SGT to give stats in a.....
> (Exhibit "AD ")

136.     After Defendants' *repeated* attempts to coerce Chief Quarterman to commit
a criminal act by "placing drugs in Larry Baker's vehicle and then have him
pulled over by Walthourville Police Department" O.C.G.A §16-10-94(a)
states that "A person commits the offense of tampering with evidence when,
with the intent to prevent the apprehension or cause the wrongful
apprehension of any person or to obstruct the prosecution or defense of any
person, he knowingly destroys, alters, conceals, or disguises physical
evidence or makes, devises, prepares, or plants false evidence."

137.     O.C.G.A §16-10-94(c) states that "Except as otherwise provided in this subsection, any
person who violates subsection (a) of this Code section involving the prosecution or
defense of a felony and involving another person shall be guilty of a felony and, upon

Southern District of Georgia
Savannah Division                         Page **28** of **94**                    Bernie Quarterman v.
                                                                     City of Wathourville, Georgia and
                                                                                     Daisy S. Pray,

individually

conviction thereof, shall be punished by imprisonment for not less than one nor more than three years." "To avoid rendering the term meaningless, we must interpret the language "involving another person" as imposing felony punishment when the person commits the tampering offense involving the prosecution or defense of a third person." English v. The State, Court of Appeals of GA, No. A06A0982 (11/27/2006) O.C.G.A §16-4-7(a) states that " A person commits the offense of criminal solicitation when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct."

138.   Chief Quarterman repeatedly requested the need for an investigation, grand jury, and

indictment of Mayor Daisy Pray. Chief Quarterman did so in the capacity of a

confidential informant to the District Attorney Tom Durden. Chief Quarterman

specifically requested that an investigation be conducted into the allegation, because he

was a direct witness. However, there are other credible witness that can testify to this

allegation and the facts behind it as well as audio recordings.

139.   Audio voice recording, transcript, of Chief Quarterman and City Council Larry Baker,

District Attorney Tom Durden, Shana Moss, Councilwoman Luciria Lovett as follows:

Quarterman & Larry Baker

| | |
|---|---|
| 1:41 sec Quarterman: | umma talk to Tom again today, I talked him yesterday, say he on it |
| 1:43 sec Baker: | ok, ok, ok, ok |
| 1:45 sec Quarterman: | alright uh, uh |
| 1:49 sec Quarterman: | he say, he don't uh, them girl still messing up out there |
| 6:32sec Baker: | come on now, do the math on that, but her day is coming, I hope they, we suppose to have a meeting Tuesday, it's a regular council meeting |
| 6:43sec Quarterman: | um hum |
| 6:43sec Baker: | but I hope the FBI in and lock her ass up right in front of those folk |
| 6:48sec Quarterman: | I meet Mr. Durden in just a little bit, and um we'll connect back on Sunday |
| 6:54sec Baker: | we connect back on Sunday. |
| 6:54sec Quarterman: | I'm watching my back cause she do got me kinda shook, she dangerous man |
| 6:58sec Baker: | yep, yep |
| 7:00 Quarterman: | I hearing something she saying around town |
| 7:00sec Baker: | yep, yep |

Southern District of Georgia                                                                          Bernie Quarterman v.
Savannah Division                              Page 29 of 94                    City of Wathourville, Georgia and
                                                                                                              Daisy S. Pray,

individually

| | |
|---|---|
| 7:01sec Quarterman: | do i |
| 7:01sec Baker: | Don't just me and you, not even Graylan, and don't fool with Gary Gillard. |
| 7:07sec Quarterman: | no, I don't know him |
| 7:07sec Baker: | he's a ass, that my boss man, so I got to walk with egg shells. Oh, I don't know what Bernie Chief Quarterman talking about, this is the paper. If he was aware of all of this and da da da da, he should have said something before now, I left it alone because I'm at work |
| 7:24sec Quarterman: | I don't worry about that, you know why I tell you when it first happen the GBI's was notified and the GBI's was notified on the other stuff before then, well, all that stuff is documented. |
| 7:38sec Baker: | And then Shana Moss and Chonte they ready |
| 7:40sec Quarterman: | There you go |
| 7:40sec Baker: | they ready |
| 7:41sec Quarterman: | There you go |
| 7:42sec Baker: | She call me the other day |
| 7:43sec Quarterman: | everybody can't be lying with all this information |
| 7:44sec Baker: | That's the only thing I said out in the street |
| 7:50sec Quarterman | I asked Tom let get it in front of a Grand Jury |
| 7:51sec Baker: | Let do it |
| 7:52sec Quarterman: | cause everybody can't be lying, you have too much stuff of things going on even when they brought Chandra Taylor in |
| 7:58: sec Baker: | Yeah she needs to be in front of the Jury too |
| 8:00sec Quarterman: | There you go cause, uum uum the way Melissa did that |
| 8:36sec Baker: | well Jeff told the leadership, Jeff told council person, he said look here, your charter says, I told him with all due respect your honor, I know what the dam charter says but you've taken all this power from council and given it to her. |
| 8:52sec Quarterman: | He aint allow to do that. |
| 8:53sec Baker: | he's not allow to do that, and they said the meeting that yall had the other day, that wasn't uh |
| 8:58sec Quarterman: | He cited the Sunshine law, which he violated that and afterward he trying to encourage them to make a decision on me then, he not there to encourage to make a decision to oust the chief, he there as a legal advisor |
| 9:10sec Baker: | as a legal advisor and his white ass is going to get immunity, he wont go to jail, he lie and say well I told Mayor Pray, I recommended to Mayor Pray this this this toward chief, I didn't recommend this, they lie, they lairs. But listen I have a10 o'clock on the other side of town, I'll back Sunday, matter fact I'll let you know I'm trying be back before dark Sunday but uh my brother just call me said someone broke into his house last night and I'm going up to da be with him and I'm going to a funeral tomorrow |

Quarterman & Tom Durden, Shana Moss

Southern District of Georgia
Savannah Division                    Page **30** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Quarterman: [00:15:58.6] We were <u>waiting on you</u>. The head from the Region 5 was waiting to see what you were going to do.

Durden: [00:16:11.2]   About the <u>GBI</u>. Okay? I just talked to Region 5.

Quarterman: [00:17:05.1] I didn't know where we were at on it.

Durden: [00:17:06.0]   The last question you asked was I going to ask for <u>a GBI investigation</u>

Quarterman: [00:26:46.7] All the supporting documents <u>on her threats</u> there

Durden: [00:26:47.6]   oh okay

Quarterman: [00:27:24.8] Under oath, Sgt Burgess you want to change his mind and the openness with which will become a lie at that time we got another statement from Ms. Cadell as well that will be coming.

Durden: [00:30:00.5]   Mayor Pray, is she up for election this time or when

Quarterman: [00:30:06.0] I guess you can be I don't think there's a cap on how many times they can run in Walthourville.

Durden: [00:30:07.5]   What's the term

Quarterman: [00:30:13.2] This is her. No, not this time.

Moss: [00:30:15.0]   The next election is 2019

Durden: [00:30:15.0]    so next year.  These elections always seem to fall at different times I can't keep up with them

Quarterman: [00:30:29.7] Hopefully the city don't have to put up with her for that long. She's done Walthourville no good.

Durden: [00:30:36.8]   Your <u>not the first</u> one I heard say that

Quarterman: [00:30:44.9] I'm the first one you heard say that

Durden: [00:30:45.6]   I said you are <u>not the first</u> one I heard say that

Durden: [00:36:10.1]   Chief You talk with the <u>GBI</u>. I know you talk to <u>FBI</u>'s

Quarterman: [00:37:22.2] I talked to the GBI's One of the agents called me back and said they would have a field agent call me.

Quarterman: [00:37:35.8]  A day or so I didn't think about it other things are going on to lead me to believe that she may have the <u>potential to try and cause some bodily harm to me or someone else</u>.

Durden: [00:37:42.4]   I asked him and He said yea there had been some communications on it and I didn't ask him and he didn't say  You actually requested the <u>GBI.</u>

Quarterman: [00:37:42.4]  Yes,  Not only that but I started explaining to him at that time when I talked to him I started to explain You know starting to look back from <u>2015 even 14</u>. I've seen more what appeared to be <u>more criminal conduct</u> that needs to be addressed as and just said at this point the mayor I call criminal because situations that I seen her done in 2014 [00:38:30.0] and then 15.

Quarterman: [00:38:34.3] When initially and I think is in the paperwork initially when I was sworn in when she telling me. Hey, I need to get something on someone.

Quarterman: [00:39:02.9] Actually narrowed down the times she's actually she actually did it um as investigations of that other group continues own she pressure and pressure pressure to <u>get something on him</u> which prompt us to go out and even do surveillance on and I came back and told her.  I don't see nothing on the man.  I said sticking my nose into it a little bit more. I

Southern District of Georgia                                           Bernie Quarterman v.
Savannah Division                    Page **31** of **94**      City of Wathourville, Georgia and
                                                                                   Daisy S. Pray,

individually

think you are too afraid to mess with dope.  Even some of his family members

Quarterman: [00:39:37.4] Has the possibility to indulge into it I said you don't see him. Hang around them long. I just don't see him in that company and I told her at that point she wanted us to focus on Duane. Which you know Duane might be in the game but we still didn't get him.  She wanted she wanted that as a line to get something to Larry Baker.

Quarterman: [00:40:33.0] In Walthourville at the time so I'm still trying to feel my way right after that Mr. Henry came into play. Mr. Henry only came into play because she put him into play. He was doing what he was doing her reasoning for doing that directly said and she said directly to myself and McFadden is because she wanted to bring shame on Larry Baker so to prevent him from running against her.

Durden: [00:41:00.3]          I remember that part in that but I didn't remember the somebody.  She wanted to put goods on Baker.

Quarterman: [00:43:45.2] Wow, this is just has all the appearance of the setup in is not something just started overnight why we're going out to him now.

Quarterman: [00:43:56.8] He hinted that the Mayor. Wanted us to go. I asked her what was up. The Mayor came to us. What do we have on James on Crowe. We call him Crowe. I asked the Mayor How long has Mr. Henry been doing this. "Oh child, Crowe has been doing this forever." Why are you going after him now. "I know Larry is going to run against me and I want to bring shame on him and Larry." So that made me back all the way out of that I said that is you going get burned on this. You need to back all the way out of this. First of all it's not the right intention.

Quarterman: [00:44:45.6] I said she knew the criminal conduct was taking place. She never said anything about it until it was for her personal use.

Quarterman: [00:45:41.1] "James I'm so sorry this happened.  I didn't know anything about" [Mayor Pray] once again. If you doing the right thing, they are doing wrong. Why do you have to apologize for doing your job

Quarterman: [00:45:54.6] Once again using her political position to take somebody out the game?

Quarterman: [00:45:59.2] And everybody can't be lying sir

Durden: [00:46:27.4]          No. Contacted the GBI May 2017.

Quarterman: [00:46:33.7] May I think it's May

Quarterman: [00:46:36.4] Cause if I'm not mistaken.

Moss: [00:47:39.7]             And we were in the conference room at City Hall at that time and we were standing there looking at no. No. No, we do it before the Christmas tree lighting in December

Moss: [00:47:47.0]             Matter of fact it was the Friday before the Christmas tree lighting.

Moss: [00:47:47.0]             On December 4 and we were looking at the giveaways

Moss: [00:47:47.0]             What are you going to do to set Baker up because he is going to run against me can't you put some drugs or something in his car

Moss: [00:48:09.4]             At that point I had on heels and I just took off running. Oh, no, I'm not going to no. No, I can't do that.

Southern District of Georgia
Savannah Division                              Page 32 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

| | |
|---|---|
| Durden: [00:48:14.9] | Well, I remember you had read two signed statements. Yeah one from her. |
| Quarterman: [00:48:27.6] | But gonna be one might one or two just one just one up to that point. You got several statements in reference to this who I reference to the threats, and that would have been 2016 what? Okay, but these this this pressure actually started from 2015 initially when I mentioned to you when I was sworn in he was there when I was sworn in |
| Quarterman: [00:49:00.8] | The pressure started from that point from that point I mean just constantly constantly and I was thinking she had to be a little |
| Quarterman: [00:49:24.1] | And I knew one day I may have to take him down. If he was doing something wrong. Unfortunately, with Mr. Henry it was different, but to me what he was doing was wrong, but what I've seen Mr. Henry and the elderly guys they want to be in the game with honey girls. |
| Quarterman: [00:50:04.9] | But it was more so a party place. I'm not saying I'm not saying the moonshine was right or legal the tax figures or illegal taxed cigarette. That was that she said it. |
| Quarterman: [00:50:21.2] | I didn't see all that, but it was enough for us to still to do our job my problem The problem I had with that was from day one like I told Mac. |
| Quarterman: [00:50:32.4] | Why she going after now that's dead wrong. And then she's putting us right there in the mix cause. She could have very well come around us and came to us and said this is what is going on. |
| Quarterman: [00:50:53.8] | When she uses the County when she thought it was going to be beneficial with her number one. Ms. Jones. |
| Quarterman: [00:51:00.1] | One of the reasons I request an outside investigation on her because of her tactics and for her wanting me for trying to pressure me to change official report five days later. The mayor goes to the sheriff's department and try to fabricate a police report on her and that's from Albritten Detective Albritten. And it also her pattern. Is there her tactic is there what she uses her position to try to do. |
| Quarterman: [00:51:29.8] | Try to |
| Quarterman: [00:51:33.2] | Place pressure and place shame on individuals because there's No way that she could have gone upstairs to commit a burglary and the detectives clearly said that it's not even a spider web removed. |
| Moss: [00:52:01.9] | She said in the report I had my keys. I did not. I gave her my keys. Everybody in city hall saw me give her my keys today, when I left city hall.   So I mean, I'm just so sick of all these lies. |
| Quarterman: [00:52:21.3] | After she left. |
| Quarterman: [00:52:25.2] | The following day or a day or so after she had myself Sergeant Burgess and if I'm not mistaken might have been Sgt Wright as well come over while the city workers changed the locks on the doors anyway. |
| Moss: [00:52:34.9] | That would have meant I would have had to jump on the roof to go into city hall. |

Southern District of Georgia
Savannah Division                    Page 33 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

| | |
|---|---|
| Moss: [00:52:57.0] | I don't live my life in the court for any Court rooms or with the police officer. I would have been terrified. Somebody would come to my house and talk about I'm trying to break in city hall. |
| Durden: [00:53:26.1] | After you reported it to the GBI and FBI the FBI I pretty well know of the FBI |
| Durden: [00:53:33.9] | And the other guy, what was his name? Andy not Douglas |
| Quarterman: [00:53:38.1] | I just met Andy I knew Douglas for a few years |
| Durden: [00:53:38.1] | But they said they were going to wait and see what the and local State |
| Quarterman: [00:53:38.1] | on our part your part here |
| Moss: [00:53:38.1] | Can I say something Mr. Durden. She said that the city attorney Jeff Arnold is so good that he can get her out of anything she gets into. |
| Durden: [00:53:38.1] | He's ain't that good |
| Moss: [00:53:38.1] | Well she talking about people don't want to go up against Jeff cause Jeff is crazy in the courtroom and Jeff has won this and Jeff has sued the hospital and  he's done this and he can get her out of anything. |
| Durden: [00:54:20.5] | Jeff is a good attorney |
| Durden: [00:54:26.1] | But he wouldn't be representing her in this because he represents the city too This is going to be her personal |
| Quarterman: [00:54:39.1] | She's got the city thinking about thinking that he will support her and even with the wrong, doing. |
| Durden: [00:54:49.9] | Well |
| Moss: [00:54:55.6] | Being the city of Walthourville would pay her legal fees.  I mean Jeff would be representing them. |
| Durden: [00:55:02.6] | Oh, yes. civil but what we have been talking about his criminal |
| Durden: [00:55:17.4] | None of my business I guess but said you have a lawyer |
| Quarterman: [00:55:24.6] | Not directly. |
| Durden: [00:55:26.1] | Okay. Well I don't mean to pry, but let me say this and you can agree or not agree a lawyer would have to agree to take a civil case against the city and her personally the city and her personally. Personally hand in her position probably. |
| Durden: [00:55:54.7] | I'm not sure. Who else do you think in any event? |
| Durden: [00:56:01.3] | Jeff would initially represent her as the city's attorney.  Let's say there were criminal warrants taken out or grand jury indictment either one. |
| Durden: [00:57:19.0] | Okay, what I guess where I'll getting around to awhile ago. Did GBI get back with you. |
| Quarterman: [00:57:28.0] | No, they are waiting on you.  That's the last thing I heard they are waiting to see what you are going to do and our conversation was extremely short he called me on the way out cuz I didn't see him while I was there. |
| Durden: [00:57:41.4] | I've talked to Tracy but no from that standpoint. |
| Durden: [00:57:45.7] | okay, they were waiting on me. Okay. All right. Let me do this. Let me let me call. |
| Durden: [00:57:57.9] | Either him or maybe his Superior. |
| Moss: [00:59:33.5] | I know what they might say. Is that since um Chief Quarterman brought all this information out about her setting councilman Baker up since all this has been on going with them. I talked to investigators |

Southern District of Georgia
Savannah Division                    Page 34 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

|  | Sand last March before any of this had ever been leaked and told him what she had told us about setting people up but 17, March 3, 2017. |
| Durden: [01:00:01.4] | When did you first come to me with this because it had to be after the operation with Lee Artisan. |
| Quarterman: [01:00:01.4] | It was actually |
| Durden: [01:00:01.4] | Hold that date in your head right there. |
| Moss: [01:00:01.4] | Yes sir |
| Quarterman: [01:00:23.2] | We arrested Lee Artisan them in March matter of fact coincidentally. I didn't know that she had the meeting. You know if you look at it at that time we were just starting to figure out that she was the problem playing in between the city hall and the police department. |
| Quarterman: [01:08:35.0] | What does she Mr. Durden what do you think she has on people that she thinks nothing will happen to her |
| Durden: [01:08:46.2] | There's no telling |
| Durden: [01:08:50.1] | From what you told me of course. I just knew her kind of arm's length in other words. Basically she was and she was the mayor of a city in my six counties and was always pleasant to me. We would meet somewhere. You know mean but to know her know her and I said, I really don't to this day. |
| Quarterman: [01:09:19.8] | Everybody can't be lying though. |
| Durden: [01:10:04.5] | But that's just crazy. |
| Quarterman: [01:12:45.9] | Are we going to go with this investigation now. |
| Durden: [01:12:56.2] | I'm going to talk to them and see what else they got and what they think about it. Because if they haven't already done it they said they want to see what I got I want and I am going to see what they need what do they want because I don't know what I can give them if you have already given them. |
| Quarterman: [01:12:58.4] | Do this or will they have to do this. |
| Durden: [01:12:58.4] | The investigation |
| Durden: [01:13:38.7] | They have to. |
| Quarterman: [01:17:04.5] | Okay, so I asked Chris said he sent he sent this to the GBI  Yeah, but he came up and he said he did he said you talked to your DA. He said we don't have a case open on there because I didn't talk to Tracy this time. The first time I talked to Tracy was approximately May 2017. |
| Quarterman: [01:17:35.8] | In other words About the time that right after the threats and then I'led into |
| Quarterman: [01:17:47.1] | Yeah, I didn't talk to Tracy then. |
| Moss: [01:17:48.1] | I talked to Tracy March 3rd, 2017. |
| Durden: [01:17:56.5] | Okay, that's it. |
| Quarterman: [01:17:57.7] | Actually that was before the before the take down actually, so we took down take down we took them down probably around the |
| Quarterman: [01:18:06.9] | Second week of March, but actually I didn't even know about that. I didn't know about that until recently about this. |
| Moss: [01:18:31.5] | He didn't know that I talked to him he found out maybe a month ago that I talked to them. It wasn't like it was being prefabricated by him because of all the situation |

Southern District of Georgia                                                                    Bernie Quarterman v.
Savannah Division                                   Page **35** of **94**          City of Wathourville, Georgia and
                                                                                                    Daisy S. Pray,
individually

| | |
|---|---|
| Durden: [01:18:31.5] | You actually talked to the GBI before |
| Moss: [01:18:31.5] | I did. |
| Moss: [01:18:31.5] | about her saying that she was setting up councilmen Baker and putting drugs in his car. I have never heard of nothing so crazy |
| Quarterman: [01:18:40.4] | And it just I mean you looking at the consistency from 2014, which is documented. |
| Quarterman: [01:18:50.6] | From her for her reasons for for wanting to set up mister Henry and then her reasons to set up Larry Baker. |
| Durden: [01:19:00.8] | Are you sure its been that long ago |
| Quarterman: [01:19:00.8] | Fall of 2014 |
| Moss: [01:19:00.8] | but if the Chief had not been an honest cop an innocent man could have been sitting in prison or been in trouble |
| Moss: [01:19:11.9] | You know. |
| Quarterman: [01:19:17.0] | And it's good that I did mention that to Agent Sands in May 2017 because if I didn't mention it in FBI September 17 January 2018. It would have looked like it was all fabricated because I was ticked off because of what she was doing. Yeah, but all this was all this has been documented and been going on since 2014 and it was in the FBI's hand before _____ came here. |
| Quarterman: [01:19:53.7] | You having knowledge of it but at that time? |
| Quarterman: [01:19:59.3] | I would say when we talked to March and I hinted it to you around then. |
| Quarterman: [01:20:07.8] | I seen things that I didn't want to see and at that time I really didn't think she was a bad of person as  I believe she is now I think she hurt not only evil. I think she has a mental problem. |
| Quarterman: [01:20:30.4] | I think her mental problem will cause her to do things. |
| Moss: [01:21:10.7] | She gave me the devil one day. She [01:21:00.0] called me in the kitchen how dare I speak to a white man before I speak to her.  I said you were engaged in a conversation with someone that would have been rude. I've worked hard to get where I got. Ok Well where have you got Mayor of Walthourville |
| Durden: [01:21:21.4] | That's crazy |
| Moss: [01:21:21.4] | For two days she would not speak to me I would need her to do city business I'm like Mam can I get your signature she swing her head one day and told me to go talk to Mr. Johnson. |
| Quarterman: [01:21:46.8] | What you need to do is talk to multiple other people and you will see that this book kind of writes itself. |
| Moss: [01:22:00.1] | It's amazing. |
| Durden: [01:22:32.8] | Where did that come from? |
| Moss: [01:22:34.8] | That was just her way of keeping us away. |
| Durden: [01:22:35.6] | That's off the moon man. |
| Moss: [01:23:07.7] | Councilmember Baker had left something inside the Council [01:23:00.0] chamber. So, I said, okay, so you're not gonna be able to take the information. I gave you. Me and Chonte talked to him. She was standing on the porch that next morning. When we got to work. I |

Southern District of Georgia
Savannah Division

Page **36** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

|  | saw you all talking to councilman baker you don't need to be doing that. |
|---|---|
| Moss: [01:23:25.4] | Yes, the kind of <u>demented deranged  stuff</u> we had to put up with. |
| Durden: [01:23:29.3] | Well what it is is an insecurity that is borderline if it isn't already there ng paranoia because she is scared somebody is going to find out something I don't know what but that <u>is paranoia</u>. Is there any precursor to paranoia it seems like i heard one of our experts testify on that before don't quote me because I am not a psychologist. |
| Moss: [01:23:29.3] | else did she just get away with this? I don't know. |
| Quarterman: | I don't know what they are going to say So are they going to have to conduct an investigation and then pass it over to you or how is this done. |
| Durden: [01:24:40.8] | Well that is generally the way it goes. So basically, you can tell them |
| Durden: [01:24:52.9] | First of all I can't tell them,. |
| Quarterman: [01:24:59.1] | I mean request I'm sorry you can request them to look at this and and do interviews |
| Quarterman: [01:25:03.7] | or  whatever. |
| Durden: [01:25:07.8] | Yep, |
| Durden: [01:25:11.5] | Then they would bring whatever that is back to me that is what they usually do. That's what usually always go my way. Okay. |
| Quarterman: [01:32:15.2] | The big one I think it was.  $60,0000 or something |
| Moss: [01:32:26.4] | Grant for USDA funding and Margaret was the finance person to be controlled, you know money. So, the kind of was $60,000 out of balance and I was like well what is it. Margaret would prepare the check Daisy Patricia green or Charlie Anderson would sign. So, one day that was another thing she Margaret cursed me again in there. Well, I don't know you supposed to be |
| Moss: [01:32:53.1] | So fucking professional. I said well don't talk to me. I told her I'm not the one who lost $60,000 dollars.  Margaret said this to me. She never got reprimanded. |
| Quarterman: [01:36:43.1] | She's just upset with Paul because he won't fold to her demands. |
| Durden: [01:37:07.1] | That's tough enough job in itself we don't to make it tougher |
| Moss: [01:37:08.0] | It is well when you put people in office who are not qualified to do the job you got issues. |
| Quarterman: [01:37:18.2] | Yeah, well, I learn. |
| Quarterman: [01:37:27.2] | I don't know politics |
| Quarterman: [01:39:11.7] | I think of an experience first time in life first time ever been reprimanded 22 years in the military and  20 20 something years in law enforcement first time ever been suspended and first time ever been fired, but she was she should be trying to push me out because, I never quit. |
| Durden: [01:39:31.6] | I think about something Shana said about right I don't mean to put words in your mouth I am paraphrasing but sometimes someone gets in a position they just can't handle and they realize they have smarter people under them they could loose that paranoia I  was talking  about |

Southern District of Georgia
Savannah Division

Page **37** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

| | |
|---|---|
| | not civil or criminal I am just talking in general they realize they can't handle |
| Quarterman: [01:41:50.7] | You know I said I just work hard and I put my heart into it |
| Quarterman: [01:42:25.3] | not only did it upset me it meant something to me yeah and I apologize Word on the street that Nate  [Mayor Pray's husband] was hanging in there prior to this and they think something went out of the ordinary |
| Quarterman: [01:42:56.2] | Absolutely. No way. Yes, it worked crimes throughout the years instincts are telling me something happened because something happened because she was she was adamant about her because I want against the word initially. I said no. |
| Quarterman: [01:44:04.4] | It was no way. |
| Durden: [01:44:51.4] | Last night |
| Quarterman: [01:45:28.7] | If you go against now I couldn't do no wrong. |
| Quarterman: [01:46:02.2] | And she said that in place when she got there |
| Quarterman: [01:46:49.1] | Mine |
| Quarterman: [01:47:34.8] | She's a whiz cause her tactic is to get something on you so had I crazy enough to set up Larry she would have had me |
| Durden: [01:47:57.3] | All right man let me give you a call |

Quarterman & Luciria Lovett

| | |
|---|---|
| 0:58 sec Quarterman: | oh, ok, ok, I needed to get, you know, anyway, also I wanted to talk to you about, you reverend Anderson, I mentioned it to you too. Reverend Anderson said in that December executive session that Jeffrey Arnold said to the council member get rid of Chief Chief Quarterman and all the inquiries about the city finances will go away uum |
| 1:29 sec Lovett: | he did say that, I told you that |
| 1:30 sec Quarterman: | yep and uhh and also uhh Larry Baker, Mr. Baker confirmed too |
| 1:37 sec Lovett: | uhh ha |
| 1:37 sec Quarterman: | and now said that he use Tom Durden and my brother Graylan to try uhh |
| 1:49 sec Lovett: | He said he had spoken to the two of them and they agreed is what he said |
| 1:58 sec Quarterman: | hum |

140.  Mayor Daisy Pray then escalated her criminal intentions by threating bodily harm to

Chief Quarterman. More specific Mayor Daisy Pray threatened to take Sgt Jerald Burgess

gun and "shoot Chief Quarterman in the head."  Sgt Jerald Burgess personally witness

this act and then expressed his concern to then Clerk of Court Shelly Cadell, Sgt Steven

Southern District of Georgia
Savannah Division                    Page 38 of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Wright, and Officer Latarchia Lee, who can personally testify to Sgt Jerald Burgess

statements as well as his concern for the welfare of Chief Quarterman.

O.C.G.A §16-11-37(b)(1)(A) states that "A person commits the offense of a terroristic threat when he or she threatens to: Commit any crime of violence." O.C.G.A §16-11-37(d)(1) states that "A person convicted of the offense of a terroristic threat shall be punished as a misdemeanor; provided, however, that if the threat suggested the death of the threatened individual, the person convicted shall be guilty of a felony and shall be punished by a fine of not more than $1,000.00, imprisonment for not less than one nor more than five years, or both." O.C.G.A §16-11-37(e)(2) states that "A person who commits or attempts to commit a violation of subsection (b) or (c) of this Code section shall, upon conviction thereof, be punished by a fine of not less than $50,000.00, imprisonment for not less than five nor more than 20 years, or both, when such act is done with the intent to retaliate against any person for or intimidate or threaten any person from: Providing to a law enforcement officer." "Only slight circumstances are needed to corroborate a victim's testimony, for purposes of O.C.G.A §16-11-37 according to Ellis v. The State, 176 Ga.App.384 (3) (336 SE 2d 281)(1983).

140. In this case the victim was a certified Police Officer, more specifically the Chief of

Police, the witness was a Police Officer and the sequential persons knowledgeable of the

act were two Police Officer and a City Clerk.

Mayor Daisy Pray continued to devolve by escalating her threats to bodily harm by

stating she would put a "hit" out on anyone who asks about the City Budget.

O.C.G.A §16-4-7(a) states that " A person commits the offense of criminal solicitation when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct."

141. As a confidential informant Chief Quarterman continued to inform District Attorney Tom

Durden of Mayor Daisy Pray's threats and intent to commit felony criminal conduct, as

well as, requesting and pushing that a formal investigation be conducted before an

individual was harmed. Chief Quarterman made it very known to District Attorney Tom

Durden that he would cooperate, be a witness, to any proceeding that would ensue.

Southern District of Georgia
Savannah Division                    Page **39** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

142.   Chief Quarterman took the threat very seriously, due to Mayor Daisy Prays conduct that day and her history of utilizing her position as Mayor to carryout person revenge. Chief Quarterman reported the threat to the Liberty County Sheriff's Office and made personal arrangements that "if something were to happen to him" that an FBI agent was to be contacted. There was more than ample credible witnesses and audio recording to pursue an indictment.

143.   Unbeknown to Chief Quarterman at that time, one of Mayor Daisy Pray's victims and witnesses had already approached Sheriff Steve Sikes and GBI Agent Tracy Sand about Mayor Daisy Pray's alleged criminal conduct asking for a formal investigation. Once again, all this can be collaborated with credible witnesses and audio recordings.

Mayor Daisy Pray's alleged felony criminal conduct was also being reported by the President of the NAACP, Graylan Quarterman, as follows: "Attached are some case information for Wathourville where allegations are alleged that an elected official has committed criminal activities. Reported by the Chief of Police. These allegations have been reported to, FBI, GBI, DOJ, DA and County Sheriff and the Governor have been notified. Reported to Liberty County/State/National NAACP October 19, 2017.  It was reported to FBI on October 19, 2017.

144.   I reported these alleged criminal activities to Mr. Tom Battle (DOJ- ATL) on October 30, 2017. Reported to local District Attorney and Sheriff on November 13, 2017. Reported to Governor on January 3, 2018." (Exhibit "AE")

145.   I reported these alleged criminal activities to Congressman Buddy Carter who refer it to State Rep Al Williams. No State elected official pursued a formal investigation to bring

Southern District of Georgia
Savannah Division                          Page **40** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

justice to Mayor Daisy Pray's criminal conduct, hence the need for the Federal

Government to. (Exhibit "AT")

146. Thus, negating that there is any plausible "genuine" lack of evidence, but rather on the

contrary ample. No "reasonable jury could return a verdict" contra to the evidence.

147. It was at this point City Attorney Jeffery Arnold announce in a closed secession city

council meeting that allegation of unethical and criminal conduct had been reported by

Chief Quarterman on Mayor Daisy Pray.

In determining whether revealing the identity of a confidential informant is
permissible comes from Roviaro v. United States, a 1957 Supreme Court case. In
this case, the Supreme Court ruled that the identity of a confidential, although
privileged was limited and could be revealed provided that the contents of the
informants communication is relevant and helpful to the defense or essential for
fundamental fairness." The Supreme Court went further to hold that the decision
to reveal the identity of an informant requires "balancing the public interest in
protecting the flow of information against the individual's right to prepare his
defense." To illustrate, a defendant must show that the identity of the confidential
informant is necessary to prove their guilt or innocence in order to have a chance
at succeeding on this motion. However, as it pertains to Georgia, a pretrial motion
to reveal the identity of a confidential hearing requires a two-step process. First,
the trial court must determine the type of informer and if the information is
material to the guilt or punishment of the defendant; whether the testimony of the
prosecution and defense are in conflict; and if the informer is the only available
witness to support or contradict the testimony.

Chief Quarterman's identity a substance of his testimony was revealed prior to an official

investigation or charges filed. Chief Quarterman was denied the right to a "pretrial

motion to reveal [his] identity."

148. Audio voice recording, transcript, of Chief Quarterman, City Councilman Charlie

Anderson, and Councilwoman Luciria Lovett, as follows:

Southern District of Georgia
Savannah Division

Page **41** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

## Quarterman & Luceria Lovett

3:58 sec Lovett: What it is <u>Mayor is trying to rule by intimidation</u>, so if they <u>get rid of the head</u> she think that going to solve her problem, but what she doesn't realize it could also make it worse, which is what happen

4:12 sec Quarterman: well what she, you know uhh, she been doing the wrong thing and she need to be held accountable for it and now she has created victims under her leadership by and by her criminal conduct; she has created victims and she need to be held accountable

3:37 sec Lovett: what do you mean she has created a victim?

3:39 sec Quarterman: several victims, I'm one of her victims, what she has done she needs to be held accountable for is and if I've done it, they've been, I'd been down to Liberty County jail being fingerprinted

4:52 sec Lovett: uh hah

4:52 sec Quarterman: She no different from anyone other citizen that decide to take conduct like in her hand, through intimidation or whatever method uhh

5:05 sec Lovett: well maybe they are trying, they are still investigating

5:09 sec Quarterman: yep, I would hope so, I would hope so

5:13 sec Lovett: and some investigations take longer than others

5:14 sec Quarterman: yes yes, and hope hope, I hope that they are doing the right thing, yeah but I

5:23 sec Lovett: I hope so as well

Sec. 2-9. – "Misfeasance or malfeasance in office." of the Code of Ordinances of the City of Walthourville. (Exhibit "<u>AF</u>")

> In case the <u>mayor or any councilman</u>, while in office, shall be guilty of any misfeasance, malfeasance, willful neglect, or abuse of the powers confided in him, he shall be subject to indictment in the Superior Court of Liberty County, and on conviction shall be fined in a sum not exceeding $100.00, and shall be removed from office. The said fine may be collected by execution and shall be paid to the city treasurer for the use of the city.

## Quarterman & Charlie Anderson

Anderson: [00:01:28.5] Listen I just had a talk with what <u>Mayor she tells me</u> is. You don't listen to nothing. She says <u>you don't follow directions or follow orders</u>

Southern District of Georgia
Savannah Division                              Page **42** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Quarterman: [00:03:20.1] She has never told me not to let the cars run. Acquired about why cars were running and it was because the computers were in the cars. And I was the enemy. That's no different than with the reprimand it's retaliatory this is retaliatory too. With Burgess this is a lie a straight lie

Quarterman: [00:03:39.5] She's coming at me the same way she came at McFadden and she even try to come at Lee this week Officer Latarchia Lee and it was a lie. They're Constantly trying to come at things with the police department

Anderson: [00:03:43.9] Why don't she just let you all do your job

Quarterman: [00:03:43.9] I just gave it up I don't know and we are going to keep working. As long as we keep working there hasn't been one week that something hasn't come at us. The more the citizens love us the more she hates It's no different than with McFadden.

Quarterman: [00:04:48.0] She mentioned something to Burgess cause Burgess came to me last night watch out who you are venting to cause you know they will go back. Somebody venting and say something say it to their face I am not the coward type. But I not the type to stir up problems. If the mayor can't see that somebody is trying to stir whatever up that is her problem at this point she is starting to beat on me too much okay now we are calling for the City Council.

Quarterman: [00:05:31.8] Some point, it has to stop she's trying to damage my reputation I'm not going to let her do that. I came here with impeccable reputation I've seen people's reputation get damaged here through the Mayor since I have been here. I'm not gonna allow the mayor to damage my reputation I didn't do nothing to this woman. I don't know what she thinks I know or whatever why she's coming at me like this. I don't disrespect her this is the same thing she tried on McFadden.

Quarterman: [00:06:03.9] Okay, will tell you this. This is a direct pattern for whatever reason. She knows I don't disrespect her in any way.

Quarterman: [00:07:01.5] He copies he clarifies there's a lot more things that's been than going on there sir than you know of, and I'm about to bring it forth and they know it and I am tired of it.

Anderson: [00:07:21.2] Maybe will

Anderson: [00:07:29.2] I don't know that Miss Moss had left.

Quarterman: [00:07:30.4] Well you know something that's a lie and that's going to come out because let me tell you something there was going back and forth to the police department and to City Hall saying different things and we and I had I wrote a letter y'all should have gotten a copy of that letter did not give it to you. I wrote a letter to the mayor and I said I said mayor.

Quarterman: [00:08:17.2] We constantly hear that was from her that the city hall had problems with us that that Police Department got the call from City Hall I say but we're

Southern District of Georgia
Savannah Division

Page **43** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

not hearing it from there. Can we you arrange a meeting and I'll bring you that letter can you arrange a meeting so all of us can be in the same place and talk about and see what is going on with each other.  The Mayor took that letter over to Miss Moss over to City Hall and five minutes later she came back.

Quarterman: [00:08:47.1] Inside that letter I had asked for some numbers for the budget. She came back five minutes came back and said Miss Moss quit.  We looked at each other. Cause I let my group read the letter cause I wanted to make sure all of us was in  agreement what was going on and we didn't put anyone's name in it targeting anybody. I said why would anybody quit because of this letter we found out months later that ain't what was said over there the letter was never given to them something was said to prompt that lady to quit. It's going to come out. That's why that lady is suing right now.  With Chonte.  They are mad with me right now.

Quarterman: [00:09:42.6] They wanted me to lie on a report I told her I'm not changing it because they said that Chonte went into that system and change her pay ways and Ms. Lewis and Moss got on the phone speaker phone and with all of them there Ms. Lewis said I did it cause Ms. Moss showed me how to do it and the Mayor was there and gave the okay. Cause Chonte does not have the code to change it anyway. So at that time I thought I thought that you didn't get that letter either.

Anderson: [00:10:15.5] No

Quarterman: [00:10:15.5] It's in the report I thought that I said ok well Ms. Jones will tell Chonte well we made a mistaken go ahead and sit back down.  Ms. Jones looked and said I don't care I want her to leave. Chonte was hysterical and upset I said look Chonte I can't allow you to drive in this state can you go to the police department and calm down for awhile. She came to the police department. They are just doing this because I saw them going into the system and try to change things around on the budget. Whatever that meant I don't care and its in the report.

Anderson: [00:10:36.3] She has no firing power [00:10:30.0]

Quarterman: [00:11:01.8] Something's going on too

Quarterman: [00:11:41.7] That's why I sent that email out to all the council members I did not send it to Melissa Jones she is not an elected official. She's not our boss y'all are our boss and for some reason she thinks she's our boss she is not the chief of police boss.  I work for you and the City of Walthourville.

Quarterman: [00:14:06.6] Don't mention this because we don't want her to go at Lee.  Lee already has a lawsuit against the city. They didn't pay her her pay and they said they didn't have the documentation. The documentation has been there since 2015. They wanted me to say there was no documentation.

Quarterman: [00:14:36.6] Trying to get me to lie on these things. I ain't going to jail for them. Chonte has a lawsuit against them for wrongful termination.

Southern District of Georgia
Savannah Division                    Page 44 of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Quarterman: [00:15:25.9] So much in the streets right now. I just had a citizen ask me yesterday. Chief we know you are getting beat up in there. Citizens know this and they are asking the officers this. Burgess came in yesterday because the Mayor for whatever reason they are trying separate me and you.

Quarterman: [00:18:00.4] You all don't know all this stuff is going on.

Quarterman: [00:19:19.9] Please don't mention this because I don't want to get beat up or we have problems.

Quarterman: [00:19:33.3] We met over there that day Melissa and the mayor told me you handle police work we handle the budget. I said what. You leave the budget alone. I said what is that supposed to mean. Repeat the same thing. You handle police work we handle the budget.

Quarterman: [00:20:02.0] Demanding letter asking about the budge and I'm thinking I got other police chief Partners out there. I thinking had any problem with budget have you ever had to pay for a budget. Not letting them know what is going on.

Anderson: [00:20:38.9] I don't know Chief. I don't know.

Quarterman: [00:20:43.0] That's why I say everybody need to get at the same table.

Quarterman: [00:21:06.5] Easy, That could damage my resume

Quarterman: [00:21:54.7] I told you but why and I still wondering why.

Quarterman: [00:22:00.3] I never did such as God is my witness. I never disrespect Mayor Pray in all my days, My sister even upset. They came down the other day. Mt. Zion and Shaw they know what's going on.

Anderson: [00:22:30.2] Everybody knows what is going on but the council

Quarterman: [00:22:30.9] There you go. And when I try to inform you of it I get striked.

Anderson: [00:22:30.9] She said she got on you about sending out emails to the council

Quarterman: [00:22:30.9] But she did not say anything about that it was Melissa told me that. I told Melissa it was none of her business. She told me it was disrespectful to send out emails to everyone and I told her they are council members. Mayor did not say anything to me about that.

Quarterman: [00:23:16.7] I think it's because I inform you all she tried to say it because I allow Burgess to to to to take to come in the council meeting on his days off Burgess is code enforcement we allow him to come and give stats.

Quarterman: [00:23:36.2] Has been doing the council meeting for the last almost the last year. It was never said he for me not to have him come in and Burgess never complain about the coming in and that's his job. He chose to do code enforcement. He still a police officer. I said why are we getting all these interruptions, you know, so you are going to try to reprimand me and and then in my appeal process tell me I can't appeal. Going against my civil liberties like that

Southern District of Georgia
Savannah Division                    Page 45 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Anderson: [00:24:36.2] you undo it.

Quarterman: [00:24:37.4] And even in what I read in a new policy which I did my appeal in the old policy but a new policy. She's the only one that can make the decision. Ya'll going to let that ride?

Quarterman: [00:24:56.9] What she said about Lee on Saturday that wasn't true

Quarterman: [00:25:53.9] I ain't going to take the lies well. I'll tell you that right now

Anderson: [00:36:24.5] I don't know what to say to you Chief. The only thing I can tell you to do if she asked you to come in and do something do it and make sure you keep a copy of what it is. If anything should come up Mayor here is what you told me to do.

Anderson: [00:36:44.0] Make sure you cover your own

Anderson: [00:37:24.7] You are make sure you cover your behind.

Quarterman: [00:37:29.4] Why do

Anderson: [00:37:32.4] I don't know why I don't know why I don't know why she's trying to get something to get rid of you. You should make sure you got everything documented.

Quarterman: [00:37:43.4] So the job allowed that to happen with what's going on now

Anderson: [00:37:47.7] No. We probably weren't invited until after the fact that we know nothing about

Quarterman: [00:37:54.2] For the charter she had to come through the council members.

Anderson: [00:37:55.0] For the charter she doesn't always do that. [00:38:00.0] You don't know we do that a violation of the place abolish any of Still that is the after fact we did not know anything about Chonte being fired and Melissa Jones being hired till she introduced her that night at the council meeting.

Quarterman: [00:47:41.7] Now I'm on the hot seat

Anderson: [00:47:42.3] I'll ask about that

Quarterman: [00:48:35.0] We didn't have no complaint we have concerns because the information we were getting.

Anderson: [00:48:40.1] Sorry.

Quarterman: [00:49:10.5] But I'm disappointed disappointed in Mayor Pray I wish she tell me what I'm doing wrong, but I'm taking the word that I ain't doing nothing wrong. And my officers don't feel like that. What am I doing wrong what does she have against me. Because I ask about the budget.  What's in the budget so much what's the trigger

Anderson: [00:49:25.6] I'll find out, I'll ask her

Southern District of Georgia
Savannah Division                               Page 46 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Quarterman: [00:49:55.1] I'm coming out here working all the time.

Quarterman: [00:50:01.2] And some and some something going on. I don't know nothing if she thinks I know something. so She go ahead and back off please.

Quarterman: [00:50:13.9] She has crippled us and its not funny

149.    Sec. 2-46. – "Prohibitions" of the Code of Ordinances of the City of Walthourville.

      (Exhibit "AG")

 (a)    No city official shall use such position to secure special privileges or exemptions for himself or herself or others, or to secure confidential information for any purpose other than official duties on behalf of the city.

(d)    No city official shall directly or indirectly receive, or agree to receive, any compensation, gift, reward, or gratuity in any matter or proceeding connected with, or related to, the duties of his office except as may be provided by law.

(h)    No city official shall solicit or accept other employment to be performed, or compensation to be received, while still a city official if the employment or compensation could reasonably be expected to impair such official's judgment or performance of city duties.

(j)    No city official shall use city facilities, personnel, equipment or supplies for private purposes, except to the extent such are lawfully available to the public.

(k)    No city official shall grant or make available to any person any consideration, treatment, advantage or favor beyond that which it is the general practice to grant or make available to the public at large.

(l)    A city official shall not directly or indirectly make use of, or permit others to make use of, official information not made available to the general public for the purpose of furthering a private interest

150.    This is when Chief Quarterman became the focus of Mayor Daisy Pray's revenge. The

      "material facts" show that as a resultant "the 'immediate cause of [his] discharge [was]

      retaliation.'" This can be implemented through direct or circumstantial evidence. It was at

Southern District of Georgia
Savannah Division                    Page 47 of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

this point that the conspiracy/coelution began with Mayor Daisy Pray, City Clerk Melissa

Jones, and City Attorneys [State Court Judge] Jeffery Arnold and Andrew Johnson.

O.C.G.A §16-10-1 states that "Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."   O.C.G.A §16-10-5(a) states that "Any officer or employee of the state or any agency thereof who asks for or receives anything of value to which he or she is not entitled in return for an agreement to influence or attempt to influence official action by any other officer or employee of the state or any agency thereof shall be guilty of a felony and, upon conviction thereof, shall be punished by a fine of not more than $100,000.00 or by imprisonment for not less than one nor more than five years, or both." O.C.G.A §16-4-8 states that "A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy. A person convicted of the offense of criminal conspiracy to commit a felony shall be punished by imprisonment for not less than one year nor more than one-half the maximum period of time for which he could have been sentenced if he had been convicted of the crime conspired to have been committed, by one-half the maximum fine to which he could have been subjected if he had been convicted of such crime, or both."

151.   To be more "head on" as Jeffery Arnold stated [overt act] in another closed session with

the City Council Members that "if Chief Quarterman is terminated then all the allegations

against Mayor Daisy Pray would go away."  That Jeffery Arnold had made arrangements

that no criminal proceedings would pursue against Mayor Daisy Pray for her alleged

criminal conduct, "if we get rid of Chief Chief Quarterman." The fact that during this

closed session city council meeting that Jeffery Arnold nor Mayor Daisy Pray brough up

any of the allegation that were alleged against Chief Quarterman as an issue nor as the

reasoning for his termination, but rather only that "the allegations against Mayor Daisy

would go away," supports and substantiates the fact the "proffered termination basis was

false….that retaliation was the real reason," and that facts support that the events [Letters

of Reprimand, Suspension, Administrative Hearings] were in fact "pretexual." Once

again this can be "head on" proven by multiple witnesses and audio recordings, which

Southern District of Georgia
Savannah Division                              Page **48** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

will be provide during discovery. Chief Quarterman "head on" asserts that his ensuing "proffered termination basis was false....that retaliation was the real reason."

This is the causality effect of Chief Quarterman, "but-for" as a certified officer of the peace reporting as a confidential informant the felony criminal conduct of Mayor Daisy Pray to the District Attorney Tom Durden, and the subsequentially termination and damage to reputation that Chief Quarterman endured and continues to suffer from.

"Anti-retaliation" FLSA provisions are designed "to foster an environment in which employees are unfettered in their decision to voice grievances without fear of economic retaliation or reprisal." Not only has Chief Quarterman suffered economic retaliation, reprisal, but more so fear for his life for confidentially informing on Mayor Daisy Pray's criminal conduct. As a confidential informant Chief Quarterman was victimized by the "system", when after State Court Judge, City Attorney Jeffery Arnold  was made aware of Chief Quarterman's reporting of Mayor Daisy Pray's criminal conduct, that [State Court Judge] City Attorney Jeffery Arnold informed the purported criminal, Mayor Daisy Pray, that Chief Quarterman had informed on her and what was reported. Hence the conspiracy/collusion of Mayor Daisy Pray, City Clerk Melissa Jones, City Attorneys [State Court Judge] Jeffery Arnold and Andrew Johnson to "get rid of Chief Chief Quarterman." This "crossed the line" into illegal retaliation and discrimination. There are ample witnesses, audio recordings, and evidence that would "permit a reasonable jury to find that the City [Mayor Daisy Pray] unlawfully retaliated against [him]." As well as, the conspiracy/collusion of Mayor Daisy Pray, City Clerk Melissa Jones, City Attorneys [State Court Judge] Jeffery Arnold and Andrew Johnson and later allegedly District Attorney Tom Durden, based on Jeffery Arnold's statements of the "deal made."

Southern District of Georgia
Savannah Division                                Page 49 of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

152.   Prior to the 2016 Mayor Election, Daisy Pray began targeting Larry Baker, via his father James Henry, to bring "shame on him" to undermine his intent to run against her in the upcoming election. Then Mayor Daisy Pray contrived a devious plot to have drugs placed in his vehicle and subsequently arrested, in order to remove him as a political threat to her position as Mayor. Mayor Daisy Pray initial requested that said plot be carried out by the Walthourville Police Department, specifically then Chief Quarterman, and latter demanded that the plot be conducted to secure her political position. Mayor Daisy Pray has *repeatedly* utilized the Walthourville Police Department for her personal gain.

153.   Mayor Daisy Pray's concerns for Larry Baker running against her were confirmed when Larry Baker won, by a landslide, the Mayoral race in 2019 and subsequently Attorneys Jeffery Arnold and Andrew Johnson were relieved of their duties as City Attorney. City Clerk / Human Resources Administrator Mrs. Melissa Jones has been terminated from her positions and from her employment with the City of Walthourville.

## Quarterman Loses Job Opportunities in Georgia

154.   On or about <u>December 2017</u>, Quarterman applied for at the Chatham County Police Department, for a Police Officer and Supervisor positions and was denied because of the Flag on his POST due to the circumstances surrounding his termination from the City of Walthourville.

155.   On or about <u>January & March 2018</u>, Quarterman applied for the Chatham County Board of Education Police Department, for a Police Officer, Captain position, and Assistant Chief position and was denied because of the Flag on his POST due to the circumstances surrounding his termination from the City of Walthourville.

156.    On or about <u>January & May 2019</u>, Quarterman applied for the Savannah State University
         Police Department, for a Major's position and Chief of Police position and was denied
         because of the Flag on his POST due to the circumstances surrounding his termination
         from the City of Walthourville.

**Count 1**

**Violation of 29 U.S.C. §215(a)(3)**

**FLSA RETALIATION**

157.    Plaintiff reaves, realleges, and incorporates herein each and every averment and
         allegation of this Complaint as though fully set forth herein verbatim.

158.    29 U.S.C. §215 (a)(3) makes it unlawful for any person…to discharge or in any other
         manner discriminates against any employee because such employee has filed any
         complaint or instituted or caused to be instituted any proceeding under or related to [the
         FLSA], or has testified or about to testify in any such proceeding, or has served or is
         about to serve on an industry committee.

159.    The FLSA's definition of the word "person" includes "an individual, partnership,
         association, corporation, business trust, legal representative, or any organized group of
         persons."

160.    Defendants both meet the definition of a "person" under the FLSA.

161.    Defendants were prohibited from retaliating against Plaintiff because he engaged in
         activity protested under the FLSA.

162.    Plaintiff engaged in statutorily protected activity under the FLSA by reporting to the
         District Attorney, Tom Durden, of the Defendants criminal conduct, filing his "OSHA
         Whistleblower Complaint," and by participating in an FLSA lawsuit.

Southern District of Georgia
Savannah Division                    Page **51** of **94**                    Bernie Quarterman v.
                                                                    City of Wathourville, Georgia and
                                                                                  Daisy S. Pray,

individually

163.    Defendants' actions, policies and/or practices as described above, which resulted in a
        pattern or antagonism towards Plaintiff, violate the FLSA's anti-retaliation provision. 29
        U.S.C. §215 (a)(3).

164.    Defendants knew that their conduct violated the FLSA, and Defendants acted with malice
        or with reckless indifference to Plaintiff's federally protected rights.

165.    Defendant's violations of the FLSA were willful and in bad faith.

166.    Plaintiff suffered adverse actions as a result of his statutorily protected conduct.

167.    Defendant's retaliatory conduct was not "wholly unrelated" and was, in fact, directly
        related to Plaintiff engaging in activity protected under the FLSA.

168.    Plaintiff's activity protected under the FLSA was the motivating factor in Defendants'
        decision to retaliate against Plaintiff.

169.    As a direct and proximate result of the retaliation, Plaintiff has sustained financial losses,
        including lost wages, compensation time, and benefits, for which he is entitled to recover
        from the Defendants.

170.    As a direct and proximate result of the retaliation and hostile environment, Plaintiff has
        suffered severe emotional distress, for which he is entitled to recover from Defendants.

171.    Pursuant to the FLSA, 29 U.S.C. §215(a)(3), Plaintiff is entitled to recover actual and
        liquidated damages, including lost wages, as well as compensatory damages, attorney's
        fees, and the cost of this litigation.

## Count II
### Violation of 29 U.S.C. §215(a)(3)

Southern District of Georgia
Savannah Division                    Page **52** of **94**                    Bernie Quarterman v.
                                                                City of Wathourville, Georgia and
                                                                            Daisy S. Pray,
individually

## FLSA COMPENSATION

172.    Plaintiff reaves, realleges, and incorporates herein each and every averment and
        allegation of this Complaint as though fully set forth herein verbatim.

173.    Plaintiff is non-exempt for purposes of the FLSA, 20 U.S.C. §201 et seq.

174.    Defendants have violated the FLSA, 29 U.S.C. §207, by failing to pay overtime wages
        for time Plaintiff worked in excess of forty (40) hours in given workweeks.

175.    Pursuant to the FLSA, 29 U.S.C. §216, Plaintiff brings this lawsuit to recover unpaid
        overtime wages, liquid damages in an equal amount, attorneys' fees, and the cost of this
        litigation.

176.    Defendant's violations of the FLSA were willful and in bad faith.

177.    Defendant knew or showed reckless disregard for its actions, policies, and/or omissions
        violated the FLSA.

178.    "As to his [Chief Quarterman] claim for overtime pay under the FLSA, Chief Quarterman
        has pleaded no facts tending to prove the City's knowledge or reckless disregard
        regarding a wrongful classification of the Chief of Police position under the FLSA, and
        therefore a two year statute of limitation applies, barring Chief Quarterman's claim." On
        February 7, 2018 Chief Quarterman e-mailed Mrs. Melissa Jones regarding his "request
        for overtime compensation" along with a detailed spreadsheet. Chief Quarterman did in
        fact "contend during his employment that as Chief of Police he was improperly classified
        as exempt or that he was entitled to overtime pay" by compiling the data [facts] on a
        spreadsheet and submitting it to the City. On February 15, 2018 Chief Quarterman

Southern District of Georgia
Savannah Division                          Page 53 of 94                    Bernie Quarterman v.
                                                                    City of Wathourville, Georgia and
                                                                                      Daisy S. Pray,

individually

received an e-mail from Mrs. Melissa Jones "deny" his claim. In her explanation Mrs. Melissa Jones intentional omitted that Chief Quarterman held several positions as well as additional duties. Chief Quarterman was also the and internal affairs investigator, and lead investigator, and functioned as a patrol officers, due to being undermanned, which is supported by his multiple arrests and successful convictions thereof. Chief Quarterman also operated as a patrol officer as evidenced by his login with 911 and traffic citations issued. Chief Quarterman filed his complaint on January 7, 2020 will within the two- and three-year statute of limitation from when he was "deny." (Exhibit "AH")

## Count III
## Fourteenth Amendment Right to Due Process: Fair Procedure
## (42 U.S.C. §1983)

179.    Plaintiff reaves, realleges, and incorporates herein each and every averment and allegation of this Complaint as though fully set forth herein verbatim.

180.    The Due Process Clause of the Fourteenth Amendment protects rights that are fundamental or implicit in the concept of Fair Procedure for administrative proceedings, states must provide a hearing before an impartial judicial officer, the right to an attorney's help, the right to present evidence and argument orally, the chance to examine all materials that would be relied on or to confront the cross-examine adverse witnesses, or a decision limited to the record thus made and explained in an opinion.

181.    The Due Process Clause of the Fourteenth Amendment requires that states provide fair procedures and an impartial decisionmaker before infringing on a citizen's interest in life, liberty, or property.

Southern District of Georgia
Savannah Division                    Page **54** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

182.   The Due Process Clause of the Fourteenth Amendment also requires that states give employees with protected property interest in their jobs notice of the charges against them, an explanation of the employer's evidence, and a meaningful opportunity to present their side of the story before they are terminated.

183.   Defendants failed to give Quarterman a hearing before an impartial judicial officer.

184.   Defendants failed to give Quarterman the right to an attorney's help.

185.   Defendants failed to give Quarterman the right to present evidence and argument orally.

186.   Defendants failed to give Quarterman the chance to examine all materials that would be relied on or to confront the cross-examine adverse witnesses

187.   Defendants failed to give Quarterman any meaningful opportunity to respond to his proposed suspension without pay and proposed dismissal.

188.   No adequate means of remedying these procedural violations exist under municipal or state law.

189.   By depriving Quarterman of his protected property interest in his employment without due process of law Defendants violated the Due Process Clause of the Fourteenth Amendment.

190.   WHEREFORE, Plaintiff respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

191.   Chief Quarterman did have an implied "valid employment contract" with the City of Walthourville as indicated by Sec. 2-46. – "Prohibitions" of the Code of Ordinances of the City of Walthourville. (Exhibit "AG")

Southern District of Georgia
Savannah Division                    Page 55 of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

192. (e)      No city official shall enter into any contract with, or have any interest in, either directly or indirectly, the city except as authorized by state law.

193. (2)      This prohibition shall not be applicable to an otherwise <u>valid employment contract between the city and a city official who is not elected</u> (such as, by way of example, a city manager, city administrator or <u>chief of police</u>).

194.

195. Justice Powell wrote. "That right is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." [1]

196. Chief Quarterman was denied "appropriate procedural safeguards" when he was denied a hearing before an impartial judicial officer, an attorney, and the right to present evidence and argue orally, examine all materials, to confront the cross-examine adverse witness in a "meaningful opportunity." All due to the fact that Mayor Daisy Pray was the sole person adjudicating and in light of the fact Chief Quarterman had reported her alleged felony criminal conduct, with supporting evidence, to District Attorney Tom Durden. As well as the fact that City Attorney Jeffery Arnold and District Attorney Tom Durden had a "deal" that no criminal proceedings would purse against Mayor Daisy Pray for her alleged criminal conduct, "if we get rid of Chief Quarterman," according to the witnesses and audio recordings. Thus by "by constitutional guarantee… may not constitutionally authorize the deprivation of such an [property] interest… without appropriate procedural safeguards."

197. The City's assertion that Chief Quarterman "does not allege facts to support a contention that a state mandamus proceeding seeking for the state court to order a name-clearing

---

[1] 416 U.S. 167 (Justices Powell and Blackmun concurring). See 416 U.S. at 177 (Justice White concurring and dissenting), 203 (Justice Douglas dissenting), 206 (Justices Marshall, Douglas, and Brennan dissenting).

Southern District of Georgia                                                    Bernie Quarterman v.
Savannah Division                          Page **56** of **94**           City of Wathourville, Georgia and
                                                                                         Daisy S. Pray,

individually

hearing would have been inadequate" is circular in its logic and reasoning. "A (writ of) mandamus is an order from a court to an inferior government official ordering the government official to properly fulfill their official duties or correct an abuse of discretion. (See, e.g. Cheney v. United States Dist. Court For D.C. (03-475) 542 U.S. 367 (2004) 334 F.3d 1096.) According to the U.S. Attorney Office, \"Mandamus is an extraordinary remedy, which should only be used in exceptional circumstances of peculiar emergency or public importance."

198.    The entire city government, "government officials," for the City of Walthourville was comprised of Mayor Daisy Pray, Councilman Vincent Pray, Councilman Larry Baker, Councilman Charlie Anderson, Councilwoman Patricia Green, and Councilwoman Luciria Lovett. Councilwoman Lovett is the only "government official" that spoke out against the unethical and alleged felony criminal conduct of Mayor Daisy Pray and attempted to intercede on Chief Quarterman's behalf. In fact, when Councilwoman Lovett attempted to be at the Administrative Hearing she was told by Jeffery Arnold that due to the "Sunshine Laws she was not permitted" and forced to leave the hearing prior to its start under the directives given by Mayor Daisy Pray and City Attorney Jeffery Arnold. While Councilwoman Lovett was being discriminated against, Councilwoman Patricia Green and Councilman Charlie Anderson were permitted to attend.

199.    Had Chief Quarterman pursued a "state mandamus seeking for the state court to order a name-clearing hearing" the same governing body, "government officials," would have been the same authority over the hearing, that went into executive season, not to discuss the allegations against Chief Quarterman, but to be informed that City Attorney Jeffery Arnold had "made a deal." That no criminal proceedings would purse against Mayor

Southern District of Georgia
Savannah Division                    Page **57** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Daisy Pray for her alleged criminal conduct, "if we get rid of Chief Quarterman," and Councilwoman Lovett was the only one who attempted to intercede against this abuse of power. To repeat an action over and over and expect a different outcome is the definition of insanity, not the actions of a "reasonable" person.

200.  The fact that a Mayor, a State Court Judge, and a allegedly the District Attorney were parties to the conspiracy/collusion only supports the need for separation from state for impartiality and unbiases, and for the Federal Courts to adjudicate on the matter to protect the rights bestowed in the Fourteenth Amendment, there for "no adequate state remedies [were] available."

201.  The fact that NO Board of Ethics was established throughout Mayor Daisy Pray's entire term in office. The fact that the City Councils authorities were removed from current "Personnel Manual Effective 8/22/17) in excess of a dozen times and the authority transferred to Human Resources Administrator, Mrs. Melissa Jones. (Exhibit "AG") The fact that individuals were bard from bring their concerns to the City Council officially. Further shows that "no adequate state remedies [were] available."

### Quarterman & Larry Baker

8:36sec Baker: well Jeff told the leadership, Jeff told council person, he said look here, your charter says, I told him with all due respect your honor, I know what the dam charter says but you've taken all this power from council and given it to her.

8:52sec Quarterman:  He aint allow to do that.

8:53sec Baker:he's not allow to do that, and they said the meeting that yall had the other day, that wasn't uh

202.  Sec. 1-3. – "Definitions" of the Code of Ordinances of the City of Walthourville. (Exhibit "AI")

Southern District of Georgia
Savannah Division                    Page 58 of 94                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

203.  *Governing authority, governing body.* The term "governing authority" or "governing body" means the <u>mayor and city council</u> of the City of Walthourville, Georgia.

204.  Sec. 2-48. – "Board of Ethics" of the Code of Ordinances of the City of Walthourville. (Exhibit "<u>AG</u>")

205.  (a)     The board of ethics of the city shall consist of three residents of the city, one appointed by the mayor, one appointed by the city council, and the third appointed by the mayor and approved by a majority of the city council.

206.  (b)     All members of the board of ethics shall be residents of the city for at least one year immediately preceding the date of taking office and shall remain a resident while serving on the board.

207.  (c)     All members of the board of ethics shall serve a two-year term.

208.  (d)     No person shall serve as a member of the board of ethics if the person has, or has had within the preceding one-year period, any interest in any contract or

209.  contracting opportunity with the city or has been employed by the city.

210.  (e)     Members of the board of ethics with any permit or rezoning application pending before the city, or any pending or potential litigation against the city or any city official charged in the complaint shall be disqualified from serving on the board of ethics for that complaint. An alternate member of the board of ethics shall be selected in the same manner as the disqualified individual.

211.  (f)     The members of the board of ethics shall serve without compensation. The city council shall provide meeting space for the board of ethics and, subject to

212.  budgetary procedures and requirements of the city, such supplies and equipment

213.  as may be reasonably necessary for the board to perform its duties and

214.  responsibilities.

215.  (g)     No person shall serve on the board of ethics who has been convicted of a felony involving moral turpitude in this state or any other state, unless such person's civil rights have been restored and at least ten years have elapsed from the date of the completion of the sentence without a subsequent conviction of another felony involving moral turpitude.

216.  (h)     No person shall serve on the board of ethics who is less than 21 years of age, who holds a public elective office, who is physically or mentally unable to discharge the duties of a member of the board of ethics, or who is not qualified to be a registered voter in the city.

217.  (i)     Upon appointment, members of the board of ethics shall sign an affidavit attesting to their qualification to serve as a member of the board of ethics.

218.  (j)     Members of the board of ethics may be removed by majority vote of the city governing authority.

Southern District of Georgia
Savannah Division
Page **59** of **94**
Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Defenses to the allegations made by

Mayor Daisy Pray & City Clerk Melissa Jones

219.    First Allegation as follows:

October 15, 2017

"You were directly insubordinate to Mayor Daisy Pray, the Chief Executive Officer of the City of Walthourville. On August 16, 2017, all the department heads were notified via interoffice memo that all overtime in the City must be pre-approved by Ms. Melissa Jones prior to it being worked. You were personally informed of this policy by Mayor Daisy Pray on August 21, 2017 in a meeting attended by you, as well as Ms. Melissa Jones and the City Policy, officers of your department continue to accrue overtime at an alarming rate. As an example, Latarshia Lee accrued 121 regular hours for the period between September 27 and October 10, 2017. SGT Wright accrued 98 during the same period. This is despite the fact that Officer Latarchia Lee has filed a claim with the City for a violation of the Federal Overtime Laws and it was explained to you the reason and importance of the policy."

This "Notice of Proposed adverse action" also states the following:

"You have a right to review the materials relied on to support the reasons in this notice and/or receive a copy of the evidence file, and may request it from Melissa Jones, City Clerk. If you do not fully understand the reasons for the proposed action, I will give you further explanation upon written request."

"You have the right to answer both personally and in writing and to furnish affidavits and evidence in support of your answer. Concerning your written and/or oral replies, you will not be restricted to matters relating solely to the reasons for the proposing this action, but you may

Southern District of Georgia
Savannah Division                    Page **60** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

plead extenuating circumstance or make any other representations which you consider appropriate. You may also submit affidavits or other evidence that you wish to have considered in support of your reply. You also have the right to be represented by an attorney or other representative. A representative may be disallowed if the individual's activities as a representative could cause a conflict of interest or position, would give rise to unreasonable cost to the City, or would conflict with priority work assignments." (Exhibit "K of *Complaint for Damages* ")

Defense to First Allegation as follows:

220. The validity of the Interoffice Memo is in question. While the Sec. 10-2. - Chief of Police. "Enforce all regulations of the police department and administrative directives of the mayor" the Sec. 10-1. - Composition of police department "The police department shall be composed of the chief of police and police officers or employees as may be necessary. The supervision and control of the department is vested in the chief of police″ is in direct conflict. If supervision and control of the department were vested in the chief of police Chief Quarterman, then why was the department being micro-managed and being required to have Mrs. Melissa Jones' approval, and there for why was he being reprimanded? Overtime is a budget issue and the department was well below the approved salary budget. (Exhibit "AJ")

221. While many times an officer can complete a normal schedule and time usage can be forecasted, there are those situations i.e. during Chief Quarterman suspension, Mayor Daisy Pray suspended patrols on the evening, and the first missed patrol and elderly woman on her normal early walk was sexually assaulted and there was NO Walthourville Police on duty. She had to wait for a Sheriff Deputy to come from across the county to

Southern District of Georgia
Savannah Division                    Page **61** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

aid, while she waited at the crime scene. The next day the Mayor restored the patrol. There are many situations where 911 is called and if it takes 20 minutes or more for an officer to show up that can turn dangerous and/or deadly.

222.   Why would the Chief Executive Officer of the City of Walthourville restrict overtime when she had full knowledge that the Police Department was down (1/3) one-third of it's officers with the (2) two full-time and (1) part-time positions being left vacant? Due to the lack of manpower the Police Department was far below its payroll budget, so it was not for monetary issues.

223.   According to this proposed adverse action, "Latarshia Lee accrued 121 regular hours for the period between September 27 and October 10, 2017. SGT Wright accrued 98 during the same period." According to the Interoffice Memo dated August 16, 2017, "Overtime is defined as those hours more than 43 per week, in an established 14-day work period for the police department." (Exhibit "C of *Complaint for Damages*")

Officer Latarchia Lee 121 hours – 86 hours = 35 hours of overtime

Sgt Steven Wright 98 hours – 86 hours = 12 hours of overtime

224.   Had just the (1) one part-time position been filled there would not have been a need for overtime because the 47 hours would have been covered. This part-time position had been vacant since Officer Green left in October of 2016, one year prior. Had just (1) one of the (2) two full-time positions been full they could have had over-lapping coverage, so an officer can have back-up. Again, this position had been vacant since Officer Drummond left in December 2016, (10) ten months prior. Mrs. Melissa Jones was the Human Resource Administrator responsible for filling these positions, and qualified applicants had submitted applications and had not been interviewed.

Southern District of Georgia
Savannah Division                          Page **62** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

225. Chief Quarterman's attorney did submit a Response and Request for Information to the allegations on October 24, 2017 addressing the lack of manpower and the fact that Mrs. Melissa Jones did not respond to the request Chief Quarterman made for overtime. In leu of discussing the facts of the issues Mayor Daisy Pray choose to proceed with the action. What did this adverse action have to do with Officer Latarchia Lee's suite about not being properly paid overtime? "This is despite the fact that Officer Latarchia Lee has filed a claim with the City for a violation of the Federal Overtime Laws"

226. On August 17th, 2017, Chief Quarterman sent an email to Mrs. Melissa Jones in regard to overtime. Mrs. Mellissa Jones never replied. (Exhibit "D of *Complaint for Damages* ")

227. On August 19th, 2017, Chief Quarterman sent an email to Mrs. Melissa Jones in regard to overtime. Mrs. Mellissa Jones never replied. (Exhibit "E of *Complaint for Damages* ")

228. On August 20th, 2017, Chief Quarterman sent an email to Mrs. Melissa Jones in regard to overtime. Mrs. Mellissa Jones never replied. (Exhibit "AK")

229. On August 24th, 2017, Chief Quarterman sent an email to Mrs. Melissa Jones in regard to overtime. Mrs. Mellissa Jones never replied. (Exhibit "G of *Complaint for Damages* ")

230. On August 31st, 2017, Chief Quarterman sent an email to Mrs. Melissa Jones in regard to overtime. Mrs. Mellissa Jones never replied. (Exhibit "AL")

231. On October 25th, 2017, Chief Quarterman sent an email to Mrs. Melissa Jones in regard to overtime. Mrs. Mellissa Jones never replied. (Exhibit "AM")

232. The Overtime issue was the key bases for Chief Quarterman's termination. Mrs. Melissa Jones did not intentionally respond to Chief Quarterman's emails as [Overt act] to create a "proffered false basis for the pretextual termination....that retaliation was the real reason," that this was part of an elaborate conspiracy/collusion, involving Mayor Daisy

Southern District of Georgia
Savannah Division                    Page **63** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Pray, Mrs. Melissa Jones, and City Attorney Jeffery Arnold, to carry out what Chief Quarterman was informed of later. To be more "head on" as Jeffery Arnold stated [overt act] in another closed session with the City Council Members that "if Chief Quarterman is terminated then all the allegations against Mayor Daisy Pray would go away." That Jeffery Arnold had made arrangements that no criminal proceedings would purse against Mayor Daisy Pray for her alleged felony criminal conduct, "if we get rid of Chief Quarterman."

233. At the hearing on November 15th, 2017, when Chief Quarterman's attorney brought up the fact the department was under manpowered by (1/3) of the department, Attorney Jeffery Arnold stated "you can talk all night on it. Do you follow me?" (Transcripts Administrative Hearing p.40, Lines 7,8 Exhibit "AN") Attorney Jeffery Arnold stated "Good try; but, no. He can put in a request. Do you contend that if he puts in a request--- even if that were true, hypothetically, that he puts in a request that is not acted upon, that he's free to pay the overtime or approve the overtime?" (Transcripts Administrative Hearing p.38, Lines 8-13 Exhibit "AN")

234. Mrs. Melissa Jones acknowledged that she did receive the request, but it did not matter the only issue that Attorney Jeffery Arnold would allow to be addressed was did Chief Quarterman allow his Officers to work overtime without Mrs. Melissa Jones' prior consent. The hearing was being adjudicated by Mayor Daisy Pray.

235. It was at this point that Chief Quarterman realized that the facts did not matter in this hearing and that the outcome had already been arranged. Mayor Daisy Pray was the one who wrote up the adverse action, she was the one presiding over the hearing. Attorney

Southern District of Georgia
Savannah Division

Page **64** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Jeffery Arnold was directing the hearing in an ex parte fashion, and Mrs. Melissa Jones did exactly what she was told to do by not responding to the request.

236.   Mrs. Melissa Jones did respond and approve overtime for the city works department during this time, and during Chief Quarterman's suspension, she responded and approved overtime for acting Chief Steven Wright. The fact is that Chief Quarterman was discriminated against because he was the only one who requested overtime and was never given a response let alone approval even after multiple request.

237.   Perhaps had there been an impartial judicial officer over the hearing then Mrs. Melissa Jones could have been asked, Why?

238.   In this hearing Mayor Daisy Pray, Mrs. Melissa Jones, and Attorney Jeffery Arnold were in violation of Sec. 2-46. – "Prohibitions" of the Code of Ordinances of the City of Wathourville (Exhibit "AG") "No city official shall act as an agent or attorney for another in any matter before the city council or other city body. Mayor Daisy Pray, Mrs. Melissa Jones, Attorney Jeffery Arnold, and Attorney Andrew Johnson are all city officials and Jeffery Arnold and Andrew Johnson were the attorney for Mayor Daisy Pray since she was the moving party to the action."

239.   Mayor Daisy Pray also should have recused herself, being that she was the one who initiated the action.  "No <u>city official</u>, in any matter before the council or <u>other city body</u>, relating to a person or entity in which the official has a substantial interest, shall <u>fail to disclose for the record such interest</u> prior to any discussion or vote or <u>fail to recuse himself</u> from such discussion or vote as applicable." Sec. 2-46. – "Prohibitions" of the Code of Ordinances of the City of Wathourville (Exhibit "AG")

Southern District of Georgia
Savannah Division

Page **65** of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

240.   *City official or official*, unless otherwise expressly defined does not include city

employees but does mean the <u>mayor, members of the city council,</u> municipal court judges

(including substitute judges), <u>city manager, city clerk, city attorney,</u> and all other persons

holding positions designated by the city charter, as amended. Sec. 2-45. – "Definitions"

of the Code of Ordinances of the City of Wathourville (Exhibit "AG")


Second Allegation as follows:

October 27th, 2017

241.   "Within the last week, we have become aware of two separate issues which show your

apparent disregard for the rules and regulations of the City of Walthourville and cast

doubt on your ability to manage the Walthourville Police Department. Specifically, these

are your failure to follow City protocol in regards to the service of the Summons and

Complaint regarding Officer Latarchia Lee and the apparent lack of certifications of

Officer Latarchia Lee. Both of these issues are discussed separately herein."

On or about August 1, 2017, you were served by a deputy of the Liberty County

Sheriff's Department with a service packed for Officer Latarchia Lee. You did not inform

anyone of your receipt of these papers, and they remained on your desk for over a month,

long after the time in which the City was legally required to file an answer to the lawsuit.

The Walthourville Personnel Manual specifically provides as follows:

> When an employee is approached by a legal process server, they should refer
> the server to the City Attorney.  Should an authority not be available, and the
> employee is required to accept served papers, it is the employee's priority to
> locate and forward the information to either of the authorities listed without
> opening or reading the documents.

Southern District of Georgia
Savannah Division                           Page **66** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

It was not until the Magistrate Court called City Hall and notified the City that it was in default that we were even aware of the filing of the proceedings. This is an unacceptable lapse for an individual holding the position of Police Chief.

As you are no doubt aware, the City of Walthourville recently settled a Federal Wage & Hour claim regarding past due overtime given to Officer Latarchia Lee. In our review of the matter, we learned that Officer Latarchia Lee has failed her Radar Certificate twice and has not been authorized to run radar within the City of Walthourville since she began working here over two years ago. Taking into account that Officer Latarchia Lee will often work over 100 hours in a pay period, we question what duties she is actually performing on the road. We also question why this information was not brought to the attention of the Mayor and Council. When positions have become available within the City, they are applied for by many qualified applications.

Please advise as to the status of Officer Latarchia Lee's certification and advise as to the current training level of all the current police officers.

We propose to place this letter in your employee file ten (10) days from today's date. You have the right to submit a written reply to this letter before then, either outlining a rebuttal to the statements contained herein, and/or a statement as to why this letter should not go into your file. The Mayor will read your rebuttal/statement and make a decision. If she chooses to place this letter in your file, your rebuttal/statement will be placed there as well." (Exhibit "M of *Complaint for Damages*")

Southern District of Georgia
Savannah Division

Page **67** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Defense to Second Allegation as follows:

242.   Yes, on or about August 1ˢᵗ, 2017, Chief Quarterman did sign for servicing for
       Garnishment paperwork for Officer Latarchia Lee. Chief Quarterman was in the office
       shared by the officers and the Municipal City Clerk, Shelly Cadell, when he signed for
       the Garnishment paperwork. Chief Quarterman then made a copy of the paperwork and
       placed the copy in Officer Latarchia Lee's box and then placed the original documents in
       the "interoffice envelope." This is the same "interoffice envelope" that the Municipal
       City Clerk, Shelly Cadell placed all documentation including the daily closeout and
       deposit in for the day. Each and every day, the officer on duty is responsible for receiving
       this "interoffice envelope" from the care and custody of the Municipal City Clerk and
       hand delivering it to City Hall. Since the daily deposit was not missing it can only be
       assumed that the "interoffice envelope" was received at City Hall, however what
       happened with the rest of the contents of the "interoffice envelope" after it was received
       at City Hall is unknown to Chief Quarterman. The paperwork never left the care and
       custody of the Clerk's office as the Clerk, Shelly Cadell, can testify to as well as Officer
       Latarchia Lee to receiving a copy of the paperwork. The Municipal Court Clerk was quite
       competent and capable of securing the legal documents until they were pick up by the on-
       duty officer. The Clerk, Shelly Cadell can also testify to the fact that is was standard
       operating procedure to receive garnishments or child support documents and place them
       in the "interoffice envelope" for City Hall.

243.   As to the fabricated story that was drafted in Mrs. Melissa Jones' *Proposed Letter of
       Reprimand* that, "You did not inform anyone of your receipt of these papers, and they
       remained on your desk for over a month, long after the time in which the City was legally

Southern District of Georgia
Savannah Division                    Page **68** of **94**                    Bernie Quarterman v.
                                                              City of Wathourville, Georgia and
                                                                            Daisy S. Pray,

individually

required to file an answer to the lawsuit." Mrs. Melissa Jones would have to be questioned as to where she received her information from because the paperwork was never in Chief Quarterman's office.

244.   As to not following the rules and regulations of the City of Walthourville, whereas the regulation was cited in the letter, the header to the regulation was omitted at it is "

LAWSUITS AGAINST THE CITY" and this was a garnishment and not a Lawsuit against the City.

245.   Yes, when the previous Chief Mcfadden hired Officer Latarchia Lee she was not Radar Certified and had failed the class in Officer Training School. This why Chief Quarterman and Sgt Steven Wright, the officer in charge of training, encouraged her to take the class again. It was approved and the City of Walthourville paid for Officer Latarchia Lee to take the training class, this was done under the previous City Clerk, Shana Moss.

246.   Radar Certification is when an officer becomes certified to operate a "radar speed control device." There is also Lidar Certification which is when an officer becomes certified to operate a "laser speed control device." Neither certification is required to be a certified police officer in the State of Georgia. They are merely certifications for operating particular equipment. Officer Latarchia Lee was more than certified to perform her duties on the road, to include but not limited to all traffic violations. The summation of an officer's duties is not vested exclusively in their ability to utilize particular equipment designed exclusively for speeding tickets.

247.   Once again, what did this adverse action have to do with Officer Latarchia Lee's suite about not being properly paid overtime? "As you are no doubt aware, the City of

Southern District of Georgia
Savannah Division                    Page **69** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Walthourville recently settled a Federal Wage & Hour claim regarding past due overtime given to Officer Latarchia Lee."

248. On October 30th, 2017, Chief Quarterman did submit an Appeal to Mayor Daisy Pray at to these issues. (Exhibit "N of *Complaint for Damages*") In leu of discussing the facts of the issues Mayor Daisy Pray choose to proceed with the action.

249. Officer Anderson Deliford, Jr. was just hired by the City of Walthourville via Human Resource Administrator Mrs. Melissa Jones and he was not certified in either "Radar" nor "Lidar," just like Officer Latarchia Lee when she was hired. Officer Deliford was certified in Basic Law Enforcement, Jailer, and Corrections Officer as indicated by his Individual Officer Profile from POST. (Exhibit "AO") Officer Deliford had no interest in becoming "Radar" certified and it was not being implied that it was necessary for his employment with the City of Walthourville. Officer Deliford was interested in becoming "Lidar" certified and he did complete his training course on October 25th, 2017, (Exhibit "AP") however that does not make you certified. Once the course is completed you have to do on the job training with a field training officer and then complete so many citations utilizing the equipment. Proof of completing the course, proof of the citations completed while under supervision for the "on the job training" then has to be submitted to POST for the certification to be approved. Chief Quarterman and Sgt Steven Wright were working with Officer Deliford to help him complete his certification.

250. As of December 25, 2017, when Officer Deliford's Individual Officer Profile from POST was printed he had not yet completed the process and was not certified. On November 15th, 2017, under oath the following was stated:

Southern District of Georgia
Savannah Division

Page **70** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Mr. Arnold: Okay. Point number one, do you agree that there are other officers who are not RADAR-certified? (Other being other than Officer Latarchia Lee)

Ms. Jones: No.

Mr. Arnold: Okay. At least for purposes of our discussion, why do you say that?

Ms. Jones: I have all of their POST transcripts. In addition to that, I have spoken with the Interim Chief Wright, where he has verified that all of them are RADAR-certified.

Transcripts Administrative Hearing page 43, line 17-25, page 44, line1(Exhibit "AN")

Mr. Arnold: --if there are other officers. But if there are not other officers—

Mr. Amusan: Deliford is LiDAR-certified. There's a difference between LiDAR and RADAR, L-I-D-E-R.

Mr. Arnold: I don't know.

Ms. Jones: Yes, I know he's LiDAR and RADAR-certified.

Mr. Amusan: LiDAR and RADAR.

Ms. Jones: Anderson Deliford.

Mr. Amusan: Okay.

Transcripts Administrative Hearing page 45, line 3-13(Exhibit "AN")

251.    As evidenced by Officer Deliford's Individual Officer Profile from POST dated December 25, 2017, six-weeks after this hearing, Officer Deliford was not, had not been certified in either Liar nor Radar, that Mrs. Melissa Jones was giving false testimony under oath.

252.    Mrs. Melissa Jones falsified facts, misrepresented facts and gave false testimony as [Overt acts] to create a "proffered false basis for the pretextual termination….that retaliation was the real reason," that this was part of an elaborate conspiracy/collusion,

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,
individually

involving Mayor Daisy Pray, Mrs. Melissa Jones, and City Attorney Jeffery Arnold, to carry out what Chief Quarterman was informed of later. To be more "head on" as Jeffery Arnold stated [overt act] in another closed session with the City Council Members that "if Chief Quarterman is terminated then all the allegations against Mayor Daisy Pray would go away." That Jeffery Arnold had made arrangements that no criminal proceedings would purse against Mayor Daisy Pray for her alleged felony criminal conduct, "if we get rid of Chief Quarterman."

Third Allegation as follows:

December 21, 2017

253.   "This is a notice of proposed adverse action issued in order to give you the opportunity to review the charges against you and submit a response if you desire. In order to promote the efficiency of the City of Walthourville Police Department and maintain discipline, it has been proposed to remove you from your position as the Police Chief of the City of Walthourville on January 8, 2018.

        This proposed adverse action is based on the following allegations:

On November 15, 2017, a hearing was held at the Walthourville City Hall regarding (1) a letter of Proposed Suspension and (2) a Proposed Letter of Reprimand. After testimony was taken, an agreement was reached between yourself and the City, where you acknowledged the misconduct leading to the two adverse actions and agreed to accept the Suspension and the Letter of Reprimand. Specifically, you agreed to the following:

1.   That the policy of the City of Walthourville, as directed by the Mayor, required that all overtime must be approved in advance, in order for the City of Walthourville to maintain accurate and complete salary records. You agreed having knowledge of the policy, that

Southern District of Georgia
Savannah Division                    Page **72** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

you violated the policy, and that in the future you would abide by the policy. Regardless, in the two-week period immediately after your return to work (November 22- December 5), the department logged over 60 hours of overtime. No pre-approval for this overtime was requested.

2. That in order to promote the efficiency of the department, you agreed to provide a training schedule for a police officer within seven (7) days of the hearing with the goal of having that officer trained and certified to operate RADAR or LIDAR so that the police officer would be expected to perform all needed law enforcement duties. However, upon your return to work, you instead wrote the Mayor a letter indicating your refusal to provide such a schedule.

In addition, the following issues have arisen:

1. It has been alleged that a police officer is writing speeding tickets, despite the fact that he is not LIDAR or RADAR certified. To our knowledge, the police officer has signed a total of nine (9) speeding tickets, indicating that he clocked the majority of their speed by laser. This is not permissible under the POST standards governing our police officers and the City of Walthourville is potentially liable for this alleged misconduct.

2. You have failed to get the Municipal Court Clerk entered into the GETS computerized records system. The clerk has continuously requested that you enter her into the system so that she may perform her job by conducting background checks and checking for outstanding warrants. Because this has not been done, the clerk has been sending individuals to the Liberty County Sheriff's Office or Hinesville Police Department for the requested reviews. The Clerk's position is an important segment of the law enforcement

Southern District of Georgia
Savannah Division                    Page **73** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

team, and it is vital to the City that she be permitted to do her job. It appears that this deficiency has been existing for at least thirty (30) days." (Exhibit "AQ")

Defense to Third Allegation as follows:

254.   On November 7th, 2017, Chief Quarterman was suspended by Mayor Daisy Pray and Sgt Steven Wright was made Interim Chief. Interim Chief Wright submitted his November Schedule to Mrs. Melissa Jones with the following overtime approved by her and by Mayor Daisy Pray. (Exhibit "Z of *Complaint for Damages*") Chief Quarterman did not return to work until November 27th, 2017. Chief Quarterman made no changes to the schedule that Interim Chief Wright submitted, that had already been approved by Mrs. Melissa Jones and Mayor Daisy Pray. Chief Quarterman did prepare the December 2017 schedule. (Exhibit "AA of *Complaint for Damages*")

|  | Interim Chief Wright November 15th - 21st | | | | Interim Chief Wright November 22nd -28th | | | | | | | | Chief Quarterman December 6th - 19th | | | | | | | |
|  | PAID | | | | Scheduled | | | | Worked | | | | Scheduled | | | | Worked | | | |
|  | Reg. | Over | Holiday | TOTAL | Reg. | Over | Holiday | TOTAL | Reg. | Over | Holiday | TOTAL | Reg. | Over | Holiday | TOTAL | Reg. | Over | Holiday | TOTAL |
| Officer Wright | 86 | 46 | | 132 | 43 | 17 | | 60 | 43 | 19 | 8 | 70 | 84 | 0 | | 84 | 86 | 0.5 | | 86.5 |
| Officer Burgess | 86 | 10 | | 96 | 43 | 5 | | 48 | 43 | 6 | 8 | 57 | 84 | 0 | | 84 | 86 | 2 | | 88 |
| Officer Lee | 86 | 12 | | 98 | 43 | 17 | | 60 | 43 | 18 | 0 | 61 | 84 | 0 | | 84 | 84 | 0 | | 84 |
| Officer Deliford | 80 | | | 80 | 36 | 0 | | 36 | 43 | 5 | 0 | 48 | 84 | 0 | | 84 | 86 | 0 | | 86 |
| Total | 338 | 68 | 0 | 406 | 165 | 39 | 0 | 204 | 172 | 48 | 16 | 236 | 336 | 0 | 0 | 336 | 342 | 2.5 | | 345 |

(Exhibit "AR")

255.   The 14-day pay cycle, November 15th through 21st, that was approved by Mrs. Melissa Jones and Daisy Pray, while Chief Quarterman was suspended, the officers accumulated 68 hours of overtime. Chief Quarterman was in fact discriminated against and targeted by Mrs. Melissa Jones and Mayor Daisy Pray. When Chief Quarterman requested overtime, his e-mails were never responded too and then the overtime that did occur he was reprimanded for. On November 15th, 2017, under oath the following was stated:

Southern District of Georgia
Savannah Division                          Page **74** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,
individually

Mr. Arnold:    All right. Now, the City is in the mist or has experienced a challenge with regard to overtime; correct?

Ms. Jones:    That is correct.

Mr. Arnold:    Okay. So if I understand right, then the Mayor had elected, going forward, to have more rigor and control on the overtime to keep account of it?

Ms. Jones:    That is correct, to conjunction with the council members as well wanted to make sure that there was some sort of control over overtime, excessive overtime.

Transcripts Administrative Hearing page 28, line 11-22 (Exhibit "AN")

256.    Mrs. Melissa Jones' *Proposed Adverse Action* states, "Regardless, in the two-week period immediately after your return to work (November 22- December 5), the department logged over 60 hours of overtime. No pre-approval for this overtime was requested." Chief Quarterman did not return to work until November 27th, 2017. The week of November $22^{nd} - 28^{th}$, the 1st week of the 2-week pay cycle, was part of the November schedule that Interim Chief Wright submitted and was approved by Mrs. Melissa Jones and Mayor Daisy Pray. During that week 39 hours of overtime was pre-approved; however 48 hours of overtime was accrued and 16 hours of holiday time which is the 64 hours that "the department logged over 60 hours of overtime," that Mrs. Melissa is referring to. The same hours that Mrs. Melissa Jones and Mayor Daisy Pray approved are the overtime hours now being utilized as a basis for this Adverse Action.

257.    As you can see by the above chart, the first pay cycle under the December schedule that Chief Quarterman did prepare required No overtime, however there was 2.5 hours of overtime that was accrued. Law enforcement is not a 9-5 desk job that you can just clock out when your shift is over. Part of the 2.5 hours of overtime was due to a sexual assault

Southern District of Georgia
Savannah Division                         Page **75** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

that occurred during that time and two other smaller incidence that required a little extra time. No, Chief Quarterman did not pre-approve the 2.5 hours with Mrs. Melissa Jones, however Chief Quarterman cannot predict crime.

258. The Overtime issue was the key bases for Chief Quarterman's termination.  Mrs. Melissa Jones falsified facts, misrepresented facts and gave false testimony as an [Overt act] to create a "proffered false basis for the pretextual termination….that retaliation was the real reason," that this was part of an elaborate conspiracy/collusion, involving Mayor Daisy Pray, Mrs. Melissa Jones, and City Attorney Jeffery Arnold, to carry out what Chief Quarterman was informed of later. To be more "head on" as Jeffery Arnold stated [overt act] in another closed session with the City Council Members that "if Chief Quarterman is terminated then all the allegations against Mayor Daisy Pray would go away."  That Jeffery Arnold had made arrangements that no criminal proceedings would purse against Mayor Daisy Pray for her alleged felony criminal conduct, "if we get rid of Chief Quarterman."

259. As far as the training schedule, it was submitted within the seven (7) days. (Exhibit " U of *Complaint for Damages*") Officer Latarchia Lee could be encouraged to become either or both certified in RADAR and LIDAR. Anything more would be discrimination considering when Mrs. Melissa Jones hired Officer Deliford he was neither RADAR nor LIDAR certified. Officer Deliford wanted to become LIDAR certified and he was encouraged and supported through the process until he did achieve his LIDAR certification.

260. As far as "a police officer is writing speeding tickets, despite the fact that he is not LIDAR or RADAR certified." This officer in question is Officer Daliford and as it has

Southern District of Georgia
Savannah Division                          Page **76** of **94**                          Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

been previously stated that after he completed the LIDAR Speed Measurement Training Course on October 25th, 2017 then he would need to complete the in the "field training" under the supervision of a training officer. Sgt Steven Wright and Chief Quarterman are both training officers.  These particular citations are part on his "field training" hence why on two of the citations Sgt Steven Wright noted "observed by Sgt Wright." In fact, these citations were part of the packet submitted to POST to complete Officer Daliford's requirements for his LIDAR certification, of which he now has. Once again, a misrepresentation of the facts by Mrs. Melissa Jones and dialogue to elicit an emotional discourse toward Chief Quarterman that is fictitious in its base, but with the intent to be detrimental to Chief Quarterman for the sole purpose of the personal gain of Mayor Daisy Pray.

261.   As far as, "You have failed to get the Municipal Court Clerk entered into the GETS computerized records system. On December 8, 2017, Chande E. Taylor e-mailed Karen Branson in reference to the "SSL VPN." On December 12, 2017, Mrs. Branson replied back showing that the request had been submitted on December 12, 2017 at 6:05pm and to "Allow 10-12 business day and vender will email credentials to you." Chief Quarterman then later inquired with Mrs. Branson, as to the status of Ms. Tayor's status to being able to log into the GETS system, as of December 26, 2017 the 10 business days would have expired. On December 26, 2017 the request was re-submitted by Mrs. Branson and Ms. Taylor was e-mailed the following, "Please review the contents of this email as it acknowledges a system error in the processing of the SSL VPN request dated 12 December 2017." "The system generated GETS request number is missing. A cursory check of the system revealed the error." On December 21, 2017 Mrs. Melissa Jones

Southern District of Georgia
Savannah Division                    Page **77** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

proceeded to include this in her *Proposed Adverse Action* with no regard for the facts, but with only one intent, to contrive meritless and fictitious deficiencies with Chief Quarterman in order to promote Mayor Daisy Pray's agenda. Mrs. Melissa Jones was made aware of the "error," yet continued it as an issue for termination in the January 10, 2018 hearing.

262.   It is also material to know that Mrs. Melissa Jones personally hired Mrs. Taylor when she had no experience, no certifications, and no training after Mrs. Taylor's POST certification had been terminated and she was fired as a correction officer for allowing inmates to escape. Chief Quarterman did not agree with Mrs. Taylor being hired. There were other applicants that had experience, training, and certifications that had applied, but Mrs. Melissa Jones was in charge of the hiring process regardless of Chief Quarterman's input. Mrs. Taylor provided Mrs. Melissa Jones copies of the citations that Officer Deliford wrote prior to them be adjudicated in court, while they were open active cases, a violation of her position as Municipal Clerk.


Third Amended Allegation as follows:

December 27, 2017
263.   "Allegedly, this same officer was previously suspended by POST for failing to complete her annual training. Despite the fact you were provided written notice of the suspension on or about February 3, 2016, the officer logged 96 hours for the pay period between 2/3/16 and 2/16/16. Pursuant OCGA 35-8-21(d) and (g), this officer would have been without powers of arrest and have been unable to perform her duties as an officer of the City of Walthourville. Allowing her to work during this period potentially opened up the

Southern District of Georgia
Savannah Division

Page **78** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

City to liability for any potentially illegal arrest or stops she may have made during this period. (Exhibit "X of *Complaint for Damages*")

Defense to Third Amended Allegation as follows:

264. Yes, On February 3, 2016 a *Suspension Order* was issued for Officer Latarchia Lee, however Chief Quarterman did not receive the notice till several days later. Due to the nature of the suspension, Chief Quarterman, Sgt Steven Wright, and Municipal Clerk Shelly Cardell, immediately assisted Officer Latarchia Lee in correcting the deficiency, that vary same day on-line. The very next day after Chief Quarterman was made aware of the suspension, the suspension was removed and all of Officer Latarchia Lee's powers were restored. Chief Quarterman can not correct an issue any faster than the day he becomes aware of one, and bear in mind this suspension was almost (2) two years prior to Chief Quarterman being "written-up" in this amended Adverse Action.

265. Mrs. Melissa Jones has habitually falsified facts, misrepresented facts and gave false testimony as an [Overt act] to create a "proffered false basis for the pretextual termination….that retaliation was the real reason," that this was part of an elaborate conspiracy/collusion, involving Mayor Daisy Pray, Mrs. Melissa Jones, and City Attorney Jeffery Arnold, to carry out what Chief Quarterman was informed of later. To be more "head on" as Jeffery Arnold stated [overt act] in another closed session with the City Council Members that "if Chief Quarterman is terminated then all the allegations against Mayor Daisy Pray would go away." That Jeffery Arnold had made arrangements that no criminal proceedings would purse against Mayor Daisy Pray for her alleged felony criminal conduct, "if we get rid of Chief Quarterman."

Southern District of Georgia
Savannah Division

Page **79** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

266.    During the Administrative Hearing on November 15, 2017 City Attorney Jeffery Arnold

        made it clear that the Superior Court of the State of Georgia Uniform Rules did not apply

        nor would they be respected for this Administrative Hearing, as was indicated as follows

        from the hearing:

        Mr. Arnold:     Do you acknowledge that any conflict, that the City would not be required

to honor your conflict?

        Mr. Amusan:  That's what I've been advised. I think we had a back-and-forth consent in

court and administrative hearing, you know, during that discussion. I understand that.

        Mr. Arnold:     Do you have any case authority?

        Mr. Amusan:  I mean, I understand that I think what's represented is the City's business

must proceed regardless of what is going on in any court of law/

        Mr. Arnold:     Yes, Sir.

Administrative Hearing Transcript page 14, line 12-23 (Exhibit "AN")

        Mr. Armold:  Do you have, just by chance for the record, the case name, or whatever,

for the magistrate court case you had?

        Mr. Amusan: I actually included in my e-mail the case number. It's in Glynn County.

        Mr. Arnold:     And when you say magistrate court, a civil or a criminal matter?

        Mr. Amusan: It was a criminal matter.

        Mr. Arnold:     Okey. But you understand that that didn't delay the case, it would be up to

the Mayor to decide?

        Mr. Amusan:  Well, that's what – I think you represented that to me when we had a

conversation.

Southern District of Georgia                                      Bernie Quarterman v.
Savannah Division                        Page **80** of **94**        City of Wathourville, Georgia and
                                                                                Daisy S. Pray,

individually

Mr. Arnold:    Yes, sir. But do you have anything that refutes that in law because that is the law. I mean, I'm not aware – I mean, because what I'd like to know is did you tell your client not to show up?

Mr. Amusan:  No, I did not specifically tell my client not to show up; however, I did advise my client that I have filed a conflict with the City. Now, my understanding – and you've been practicing longer than I have and much older than me. I read the superior court rule; a criminal jury trial superseded a bench trial, a criminal supersedes ant civil that I know of. In addition to that, an administrative hearing is at the bottom of that list. I may be wrong. That's why I'm saying I defer to you, because you've been practicing longer than I have. So in all the conflict letters I've ever filed, when you have a bench trial, when you have a jury trial, when you have a criminal matter, based on the rule, on that rule, it does supersede any kind of administrative hearing.

Mr. Arnold:    Well, even giving you due respect – because I don't believe the Mayor went forward with it –

Mr. Amusan:    Right. Right. I can't sit here and say that mu conflict should delay the City's business.

Mr. Arnold:    No. No.

Mr. Amusan:  And, anyway, with all due respect to the City of Walthourville, to Mayor Pray, it's just that I find myself between a rock and a hard place. I don't believe I can go to court – or sessions of court and say, "Oh, I have an administrative hearing in Walthourville. So, I'm not going to show up in your court." You know as well as I do that I would wind up in contempt and have to face a contempt hearing. So that's where I find myself.

Southern District of Georgia
Savannah Division                              Page **81** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Mr. Arnold:      And I respect that. In fact, be advised that the Mayor makes the

determination, and the Mayor elected not to proceed.

Administrative Hearing Transcript page 17-18, line 1-25 (Exhibit "AN")

267.   During the Administrative Hearing on November 15, 2017 City Attorney Jeffery Arnold

made it clear that the United States Constitution did not apply nor would it be respected

for this Administrative Hearing, as was indicated as follows from the hearing:

Mr. Arnold:      You don't necessarily – in these administrative hearings, you understand,

he doesn't necessarily have right to counsel. That is something that the Mayor permits.

Administrative Hearing Transcript page 20, line 13-16 (Exhibit "AN")

Mr. Arnold:      -- so you'll understand – is an administrative hearing.

Mr. Amusan:   I understand. I understand

Mr. Arnold:      Well, I want to make sure you understand. There are no Rules of

Evidence.

Administrative Hearing Transcript page 12, line 4-8 (Exhibit "AN")

Mr. Arnold:      … And there is one other thing I think ought to be addressed since we're

exchanging information. The Chief must acknowledge that he works for the Mayor, and he does

not work for the other council members, who are not the executive.

Administrative Hearing Transcript page 50, line 9-13 (Exhibit "AN")

268.   During the Administrative Hearing (Name-Clearing) on January 10, 2018 City Attorney

Jeffery Arnold made it clear that the United States Constitution did not apply nor would it

be respected for this Administrative, as was indicated as follows from the hearing:

Mr. G Chief Quarterman:        Mayor and City Council Members, Mr. Chief Quarterman is respectfully requesting you all to extend this hearing, giving him time and opportunity to go over this evidence file, obtain legal counsel and prepare for this hearing. At this time, again, Mr. Chief Quarterman has no more information but to request a continuance to properly prepare for his defense.

Administrative Hearing (Name-Clearing) Transcript page 9, line 16-22 (Exhibit "AS")


Mr. Arnold:    Okay. Anything else on the notice that anybody wants to put on?

(There is no response from anyone present.)

Okay. Well, I think the Mayor has said that she's ready to proceed. Now, it seems not to be a complicated case –

Mr. G, Chief Quarterman:        So let's be clear.

Mr. Arnold:    Yes?

Mr. G. Chief Quarterman:        A request was made.

Mr. Arnold:    Yes, Sir.

Mr. G. Chief Quarterman:        What's the answer to the request?

Mr. Arnold:    It's denied, and we're going forward.

Mr. G. Chief Quarterman:        All right. So, on November 15 of 2017, we were in this room. At that time, Mr. Chief Quarterman was represented by counsel that he had retained, and counsel and he, after consultation, agreed to abide by the policy with regard to overtime.

Mr. G. Chief Quarterman:        Let me ask you a question.

Mr. Arnold:    Yes, Sir?


Southern District of Georgia
Savannah Division                              Page **83** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Mr. G. Chief Quarterman:     we don't believe due process is being provided right now because he doesn't have adequate defense here.

Mr. Arnold:    He's not entitled to a lawyer.

Mr. G. Chief Quarterman:     Why are we going –

Mr. Arnold:    Because he's not entitled to a lawyer. He's entitled to a spokesperson, and he may have a lawyer present at his expense if he desires, but it's not a requirement.

Mr. G. Chief Quarterman:     And he desired to have one.

Mr. Arnold:    It's not a requirement; he desires. And we're ready to go forward. See, that's the problem.

Mr. G. Chief Quarterman:     What's the problem?

Mr. Arnold:    The problem last time was his lawyers sort of delayed it because they have their time schedule. He's been given adequate notice. We're going forward. Got a lawyer and whatever the decision is, he has the right to appeal. He has the right to do anything. But the Mayor controls when the hearing is; the Mayor does, not Chief Quarterman. She has scheduled it for today, and we're going forward today. And your objections are being noted—So ready to go forward? We're going forward. I respect what you're saying. You've made the objection. I got it.

Mr. G. Chief Quarterman:     No, you don't respect it.

Mr. Arnold:    Yes, I do respect it, You don't have the right to delay the hearing. He has a right to have a lawyer assist him and present if that's what he wants. He makes that choice.

Mr. G. Chief Quarterman:     Right.

Mr. Arnold: He finds a lawyer. There are ten million of them out there.

Mr. G. Chief Quarterman:     And he made that choice.

Southern District of Georgia
Savannah Division                    Page **84** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Mr. Arnold:    No, The lawyer --

Administrative Hearing (Name-Clearing) Transcript page 12-15, line 15-9 (Exhibit "AS")

Mr. G. Chief Quarterman:    Can I make a statement?

Mr. Arnold:    Yes, Sir.

Mr. G. Chief Quarterman:    Instead of giving us all this information, why don't you go ahead and get to the bottom line and do what you're going to do because there's no defense here today. There's no defense.

Mr. Arnold:    No, that's your perception.

Mr. G. Chief Quarterman:    No, it's not my perception; it's what it is. We're not going to respond to what you're saying because he doesn't have his attorney here. So you can go ahead and get right to the bottom line.

Mr. Arnold:    Okay. Well—

Mr. G. Chief Quarterman:    Okay.

Mr. Arnold:    I respect that. I understand. Okay?

Mr. G. Chief Quarterman:    So don't give us the whole story. Go to eh bottom line –

Mr. Arnold/; Well, we have to give the whole story –

Mr. G. Chief Quarterman: -- make a decision and that's it.

Mr. Arnold:    We have to give the whole story because what will happen is after this matter, whatever the Mayor decides – and I don't know what she's going to decide – the facts have to come out. Okay? The facts are being presented. He can choose, just like, you know, in a civil or a criminal proceeding, either to stand moot and say nothing – that's his privilege – or you can also assert the privilege of the attorney at the appropriate time and some other form if you like. This is giving him the opportunity to clear his name before the Mayor takes action. And so

Southern District of Georgia
Savannah Division                    Page **85** of 94

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

everything that the law – it's not a big, complicated thing; it's not.  And if he chooses to stand

moot and walk out, that's his right.  And it's his right if he wants to tell the public, "I couldn't

get my lawyer, I couldn't do this." He has his right, just like he's done every time. But the Mayor

is going to follow what the law tells her she's got to do.

Mr. G. Chief Quarterman:      You know, let's follow the law.

Mr. Arnold:     We're following the law, and the law is not to go to the bottom line, do

nothing and walk out. It's to let him know everything that's being said by the Mayor and is the

basis for her action. Okay?

Now, there is another police officer on duty now who is writing tickets, as we speak

probably, who is not licensed to write the tickets and use radar, and POST has confirmed that.

So we have – have I covered all the allegations?

Mr. Johnson:  I believe so, yes, sir.

Mr. Arnold:     Okay. And those are the allegations. He refused to abide by the agreement

he and his attorney reached in November, and, subsequently, the reason why –

Now, let's address each one of those things. The Mayor's position is –

Mr. Johnson:  Getting the clerk certified.

Mr. Arnold:     Oh yes. We also have a clerk. He has refused, either intentionally or

negligently, to get the clerk certified so that the clerk is able to go online and do background

checks and do her duties.  And as a consequence, in order to do the background checks and

check the records for traffic court and that, she's having to go and ask Liberty County for that

work.  And this has been going on for months.  And so that was in the notice. It hasn't been

done. They checked with POST as to what has to be done and how it can be done. It's not a

Southern District of Georgia                                                                 Bernie Quarterman v.
Savannah Division                        Page **86** of **94**            City of Wathourville, Georgia and
                                                                                        Daisy S. Pray,

individually

problem, except that – and this not being held against – but POST is saying they've never been certified. The clerk has never had the authority. Am I right?

Ms. Jones:     Correct.

Mr. Arnold:     All right. What that means is he's never registered the people that do it. However, what's interesting is he's spent the last week on the computer accessing POST files to the extent that POST has called the City and said, "Get him off our internet." Not holding that against him. The things that he's done is he's refused to abide by the agreement he reached in November. The same officer – why the Mayor has sought the training is because the Mayor subsequently learns that that officer was suspended previously and is now suspended again. And that – what the gravamen of that is, is that it opens the City up to potential liability because he is permitting an officer, who has no law enforcement authority, no arrest power, to be functioning in that capacity. In essence, he's basically approved a Wal-Mart security guard and paid her as a law enforcement officer for the City of Walthourville. That's what he's done, either intentionally or negligently. And then the clerk, that means by which he went to register with law enforcement and work with law enforcement, he won't certify the clerk and hasn't got her certified to do what she should do.

Those are the allegations of why the Mayor is taking action. They affect the financial position of the City because the overtime, -- I'm not going to get into explaining why that was a problem. But the overtime, all the Mayor wanted to do was be able to keep track of it and account for it. That's why she's raised that issue. It is not to interfere with his law enforcement. Okay?

Did I outline all of that (indicating)?

Mr. Johnson:   Yes.

Mr. Arnold:     That's the evidence and that's the presentation. It's a simple case. That's the stuff that he was given up. If he wishes to say anything, he can. If he wishes to remain silent, that's his right. If he wished to sit there and stand on – and say, I'm not doing anything because I don't have a lawyer present" – he can do whatever he wants, but he doesn't have the right to hold up the hearing.

Mr. G. Chief Quarterman:     You keep saying the same thing, Jeff.

Administrative Hearing (Name-Clearing) Transcript page 17-22, line 12-4 (Exhibit "AS")

269.    City Attorney Jeffery Arnold was the prosecutor and effectively the adjudicator in this hearing. If fact Mayor Pray made no inquiry to the evidence, witnesses, of facts, however Jeffery Arnold did make the decisions of the hearing for the hearing and spoke on behalf of and for Mayor Daisy Pray during his ex parte monolog unsupported by any facts or evidence. In effect his "dog and pony show" to falsify statements and facts to yield the intended result of his part of his "deal" with District Attorney Tom Durden, that "if Chief Quarterman is terminated then all the allegations against Mayor Daisy Pray would go away." That Jeffery Arnold had made arrangements that no criminal proceedings would purse against Mayor Daisy Pray for her alleged felony criminal conduct, "if we get rid of Chief Quarterman." City Attorney Jeffery Arnold made it very clear that these allegations against Chief Quarterman were in fact "being said by the Mayor and is the basis for her action…[and] why the Mayor is taking action."

270.    Allegation #1 Overtime – As previously stated this was the approved overtime for interim Chief Wright, which is supported by facts, evidence, and can be collaborated by testimony. Jeffery Arnolds assertions and actions were merely manipulations of the facts and false statements to conjure the illusion, and pretense necessary for his [Overt act] to

Southern District of Georgia
Savannah Division                          Page **88** of **94**                          Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

create a proffered "false basis for the pretextual termination….that retaliation was the real reason," that this was part of an elaborate conspiracy/collusion, involving Mayor Daisy Pray, Mrs. Melissa Jones, and City Attorney Jeffery Arnold and Andrew Johnson.

271. Allegation #2 Officer Latarchia Lee's Radar/Lidar Certification & POST Certification– As previously stated, evidence provided, corroborating testimony available, the training plan was submitted. As previously stated, when Chief Quarterman became aware that Officer Latarchia Lee had been suspended in February 2016, he took action that day and Officer Latarchia Lee was re-instated the next day. As far as Officer Latarchia Lee's suspension in January 2018, Chief Quarterman was on suspension the majority of November from the 8th to the 26th and again from December 21st to January 10th, 2018. Chief Quarterman was not in an official capacity as the Chief of Police to address any issues or potential issues for the Police Department while he was suspended. Officer Latarchia Lee had until, December 31st, 2017 to complete her required training and she failed to do so.

272. Allegation #3 Clerk Certification – – As previously stated, evidence provided, corroborating testimony available, that there was "a system error at no fault of the agency." Once the system error was correct Ms. Taylor did have access to the GETS system. As the e-mails show this "error" was not detected until Chief Quarterman inquired into the status of Ms. Talyor's access.

273. The facts, evidence, and corroborating testimony is more than plausible to "permit a reasonable jury to find that the City [Mayor Daisy Pray] unlawfully retaliated against [him]." This elaborate construct was merely a rouse denying Chief Quarterman a "fair hearing," and the fact that the Liberty County District Attorney Tom Durden and State

Southern District of Georgia
Savannah Division

Page **89** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

Court Judge Jeffery Arnold were involved in a "deal" for Chief Quarterman's termination precludes that a "fair" state remedy was a viable, impartial, uncorrupted option.

## Count IV
## Fourteenth Amendment Right to Due Process: Liberty Interest
## (42 U.S.C. §1983)

274.  Plaintiff reaves, realleges, and incorporates herein each and every averment and allegation of this Complaint as though fully set forth herein verbatim.

275.  The Due Process Clause of the Fourteenth Amendment protects rights that are fundamental or implicit in the concept of ordered liberty, including the right to earn a livelihood in a common calling free from unreasonable government interference.

276.  Quarterman has a protected liberty interest in working and earning a living and establishing a home and position in his community.

277.  Defendants' groundless suspension and termination of Quarterman in a highly publicized manner stigmatized him irretrievably damaged his reputation in the community.

278.  Defendants' groundless suspension and termination of Quarterman red flagged his POST rendering it impossible for him to pursue law enforcement employment equal to his employment history and experience in any law enforcement department.

279.  The Due Process Clause of the Fourteenth Amendment secures Quarterman against such arbitrary government actions.

280.  Defendants have no rational interest, let alone a compelling interest, in terminating Quarterman in an infamous and damaging to his POST based on false and contrived allegations rendered by bias and predetermined conspired findings.

Southern District of Georgia
Savannah Division

Page **90** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

281.   Defendants' policies and practice thus violated the Due Process Clause of the Fourteenth Amendment because the grossly stigmatized Quarterman's reputation in the community, POST, and deprived Quarterman of his right to earn a living as a Police Chief, or equivalent to his education and experience.

282.   WHEREFORE, Plaintiff respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## V.    **Prayer for Relief**

**WEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendant and provide Plaintiff with the following relief:

(a)   A permanent injunction requiring Defendant, their agents, employees, and all persons in active concert or participation with them to

1.   Reinstate Quarterman to his former position as Police Chief of the Walthourville Police Department or mutually agreeable equivalent position;

(b)   Grant Plaintiff a trial by jury as to all triable issues of fact;

(c)   Grant declaratory judgment declaring that Plaintiff's rights have been violated, that Defendant mis-classified Plaintiff as exempt from the overtime requirements of the FLSA, and that Defendants' violations of the FLSA and due process were **willful**;

(d)   All equitable relief available under the FLSA;

(e)   Liquidated damages as provided by 29 U.S.C. §216, pre-judgment interest on unpaid wages pursuant to 29 U.S.C. §216;

(f)   Compensatory damages, including, but not limited to: for mental and emotional suffering caused by Defendants' misconduct, inconvenience, loss of reputation, humiliation, along with economic damages available, including cost associated with Quarterman finding new employment, lost wages, liquidated damages, lost benefits;

(g)   Nominal damages for violating Quarterman's constitutional rights;

(h)   Punitive damages based on of Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts, and as otherwise available under the law

Southern District of Georgia
Savannah Division                    Page **91** of **94**                    Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

(i)     Other equitable relief including back pay and front pay for violating Quarterman's constitutional rights and the expungement of Quarterman's disciplinary records and POST records;

(j)     Attorney's fees, cost, expenses, and other disbursement in this action pursuant to 42 U.S.C. §§1988 and 2000e-5(k);

(k)     The above-requested injunctive relief without condition of bond or other security being required of Quarterman;

(l)     Prejudgment interest on any pecuniary awards provided;

(m)     All other relief to which this Court deems just and equitable.

Respectfully submitted this ___7<u>th</u> day of April 2020.

*Bernie Quarterman, Pro Se Plaintiff*

Bernie Quarterman
128 Shipman Road
Fleming, Georgia 31309
(912) 332-0287
BernieQuart@gmail.com

Southern District of Georgia
Savannah Division                    Page **92** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

## DECLARATION UNDER PENALTY OF PERJURY

I, BERNIE QUARTERMAN, a citizen of the United States and a resident of the State of

Georgia, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746, that the forgoing

is true and correct to the best of my knowledge.

Executed this ___7___ day of April 2020.

BERNIE QUARTERMAN

**State of Georgia, _Effingham_ County**

Signed or attested before me on, this ___ day of April, 2020 <u>Bernie Quarterman</u> by  who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me whose name is subscribed to this instrument and acknowledged that they executed the foregoing instrument _____ Personally known or __✓__ Produced ID (Type of ID) _driver's license_

_Emily Miller_
Notary Public (Signature)

_Emily Miller_
Notary Public (Name typed, stamped or printed)

My commission Expires _July 5_, 20 22

*[SEAL]*



Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of April 2020, a copy of the forgoing Verified Complaint was filed with the Clerk of the Court. I also certify that the forgoing will be served, along with a copy of the Summons and Amended Complaint, via a private server upon the following Defendants:


Melissa Jones
203 Weatherly Dr. SE
Baxley, Ga 31513

Jeffery Arnold
128 South Main Street
Hinesville, Ga 31313

Andrew Johnson
128 South Main Street
Hinesville, Ga 31313

*Bernie Quarterman, Pro Se Plaintiff*

Bernie Quarterman
128 Shipman Road
Fleming, Georgia 31309
(912) 332-0287
BernieQuart@gmail.com

Southern District of Georgia
Savannah Division                    Page **94** of **94**

Bernie Quarterman v.
City of Wathourville, Georgia and
Daisy S. Pray,

individually

## U.S. DISTRICT COURT PLEADING SUBMISSION FORM

1) CASE NUMBER: _____CV -420- 00L_____

2) TITLE OF THE CASE: __Quarterman v. Wathourcille__

3) PLEADING BEING SUBMITTED:

_____Amended complont_____

4) YOUR NAME AND ADDRESS: __Bernic Quarterman__

_____123 Shipman Rd_____

_____

5) PHONE NUMBER: _____

6) DATE: _____4/8/20_____

\*\*\*PLEASE ATTACH THIS FORM TO YOUR PLEADING AND PLACE IT IN THE DROP BOX\*\*\*